WM. MILBURN et al. vs. BEACH & EDDY.

In an action of trespass where the act complained of is deliberate and aggravated, the jury in measuring the damages are not restricted to the value and interest upon the articles taken. but may take into consideration the concurrent facts in aggravation and give smart money.

Where it is clear from the whole record that a cause has been tried substantially upon its merits, and that the verdict being for the right party, is not clearly exorbitant, the supreme court will not disturb it.

Milburn et al vs. Beach & Eddy.

## ERROR to St. Louis Circuit Court.

### CROCKET & KASSON, for plaintiff in error.

1st. The instruction of the court was wrong respecting smart money, and vindictive damages. Potter & Lansing, 1 John. 222, 226; Smith vs. Putney, 6 Shep., 87.

And also in saying the jury could assess what "smart money" they pleased. It is too indefinite. Cleaveland vs. Davis, 3 Mo. 235. This was an odious and injudicious phrase calculated to mislead and exasperate the jury.

2nd. The court erred in refusing the instructions asked by the defendants with respect to damages. Brannin vs. Johnson, 19 Maine, 361; Huntly vs. Bacon, 15 Conn., 271 and p. 225; Pacific Ins. Co. vs. Carard, 1 Bald 138; Nicoll vs. Conard, 4 Pet., 291; Sedgwick on Dam, 550; Woodham vs. Gelston, 1 Johns., 137

3rd. The court presumed malice or wontonness, which the jury alone could do, with reference to exemplary damages, by taking certain facts in evidence and saying if they found those facts, doubly as facts, and not as proof of malice or wontonness, or other bad intent, they might assess what damages they pleased. It was for the jury to construe those acts.

4th. The damages were excessive. There is no evidence making the defendants liable as for a joint test. Guille vs. Swan, 19 John. 381; Williams vs. Sheldon, 10 Wend. 654. The very essence of exemplary damages is the wanton conduct, and bad intent, and court should have instructed the jury accordingly.

### TODD, for defendants in error.

The defendants in error insist that the judgment below should be affirmed for the following reasons, to-wit:

1st. The instructions given by the court below covered the case and were correct.

That, touching whom the jury should find guilty, (if any) was correct. 1 Saund. Rep. p. 207, n. 2; 9 Pick. 555; 2 J. R., 382; 10 Wend, 654; that touching damages was correct, 12 Maine Rep. p. 474; 9 Pick. 156; 10 N. Hamp. Rep., 130; Sedgwick on measure of damages p. 38 and following; 10 Pet. Rep., 80.

The trespass was without evidence in palliation or justification. The property was taken out of the hands of the plaintiffs below, with notice of their right, exhibition of their title, with full warning of the wrong being done them and that if persevered in, the fullest damages would be required to indemnify them for their injury. The reply was a kind of defiance, and the property was taken, and the business of the store was thereby broken up.

There was not even any evidence that Sherman owed the plaintiffs in the writs of attachment, anything. This is necessary—2 Pick. Rep. p. 411.

2nd. The court did not err in refusing to give the instruction asked for by the defendants below, stating an hypothesis upon which vindicative damages should not be allowed.

First, there was no evidence of any indebtedness from Sherman to the defendants below, and plaintiffs in the attachment suit against Sherman.

Secondly, parties taking and causing to be taken the property of third persons out of their actual possession under writs against another person, and subject to exemplary damages for gross negligence in such taking as well as for actual malice or evil design. It is oppression, vexation and harrassment, and an abuse of the power of process, provided ordinary diligence to learn the truth, would have prevented the taking. This was such a case and the defendants gave no evidence to show an honest belief in them against the truth of the claim and representations of the plaintiffs made below and at the time the property was taken; on the contrary, the sheriff did believe in the truth of the plaintiffs' claim and title, and so fully that

Milburn et al. vs. Beach & Eddy.

he resolved not to touch them and thus take the risk of becoming liable to the plaintiffs in the attachment suits for all damages by reason of such refusal, until indemnified. This the sheriff made known to the plaintiffs in the attachment suits. Yet they indemnify him—direct him to take the goods, and then on trial give no evidence to palliate the act, it thereby appearing a wanton trespass.

The court therefore, did not err in refusing this instruction, and did right in instructing the jury that if they saw fit under all the circumstances, they might give exemplary damages.

Thirdly. The hypothesis of the instruction is put to the jury at large, and not confined to their belief thereof from the evidence, so that under it the jury would feel at liberty to judge of the truth of the hypothesis from any and other evidence and means besides that of the evidence given in the case.

Fourthly. The same is true in regard to the next instruction asked on behalf of Milburn and refused. Besides, as between joint trespasserers the law does not recognize any grades of liability on the ground of one being more guilty than another. 9 Pick. Rep., 555.

3rd. The verdict was not excessive. It does not appear to contain any exemplary damages.

It scarcely exceeds the value of the goods at selling prices and yet a period of more than four years had elapsed since the goods were taken. The sheriff was told if he took the goods, the selling prices would be required of him, and his reply was, that he did not care— or, to that effect—that he was indemnified and would take them.

4th. The court did not err in refusing to grant the motion for a new trial. Under all the circumstances of the case, the verdict is for a less amount than supposed by the plaintiffs below. It is for the right party, and nothing excessive appears in it. In such a case this cause does not reverse. 8 Mo. Rep., p. 224, and cases there reported.

Besides, this was a second application for a new trial by the same party, and none of the causes exist therefor, required by statute. See R. S., p. 830, sec. 3, and decisions therein; 4 Mo. R., 86; 7 Mo. R., 57, 259.

BIRCH, J., delivered the opinion of the court.

Sherman, a retail merchant in St. Louis, being largely indebted to Beach & Eddy, (wholesalers in the same place,) sold them his entire stock of goods, at cost prices, towards payment of said indebtedness. The defendants in error, (plaintiffs below) thereupon took possession of the store, added some $700 worth of goods, and commenced carrying on the business through clerks, placed there for the purpose. Five days after the sale, a number of firms in the city, claiming to be creditors of Sherman, issued out writs of attachment against him, upon the alleged ground that he had fraudulently disposed of his property. The deputy of sheriff Milburn being directed by those parties to levy their attachment upon those goods, and having proceeded to the store to do so, was there told by one of the clerks that they belonged to Beach & Eddy, who had bought out Sherman, and that he had better go and see Mr. Eddy; this the deputy proceeded to do, and being told by him the same as at the store, asked him for the evidence thereof, alleging that, otherwise, he would proceed with his levy, under the writ. Eddy replied that he had no right either to touch the goods or to see the evidence,

and refused, therefore, to exhibit it, until the deputy again remarking that he would then be obliged to levy; the bill of sale was at length produced to him. The deputy informed the attaching plaintiff of the facts, and very properly declined to levy unless the sheriff was indemnified. The plaintiffs thereupon, (each for himself) gave bond of indemnity, and having again directed the sheriff to levy, it was done accordingly. When the levy was made, Eddy was at the store, and again told the deputy he had better not take the goods, but that if he did so, he had better take an inventory of them. The deputy replying that he was indemnified, was ordered to take the goods and would do so. Refused at first, but afterwards consented, to take an inventory. Eddy told him that he took them at his own risk, and that he desired the inventory, as he should hold him accountable at retail prices, to which the deputy replied that that made no difference to him. He then commenced taking the goods—appropriating to each suit what was thought would be sufficient to cover the amount claimed. The goods being inventoried as taken down, (the retail prices amounting to $2,370 28,) were the same mentioned in the declaration.

For having thus taken these goods, the defendants in error commenced against them their action of trespass *de bonis asportatis*, including the sheriff as one of the defendants. The declaration counts amongst other things, for special damages in breaking up the store of the plaintiffs, by reason of the levy. Evidence was given on the trial showing, in addition to the facts above stated, that the business of the store was large and good; that this levy so broke up the assortment of the goods, and left so few, as to cause it to be closed; that the goods taken were of those bought by the plaintiffs of Sherman; that they were in good condition, and entirely suitable for the locality and trade of the store, which (being at the upper market,) was with the farmers from the country; and that to one carrying on that store, the goods were suitable and worth their cost, comprising as these did a fresh renewal for the fall trade. It was further proven, that the retail prices in this store ranged from 12½ to 33 per cent. on the cost prices.

This was the substance of the testimony of the clerks, some of whom had long been in the store under Sherman, up to the time of the sale, and were well acquainted with the trade and the goods. Upon this point, however, persons in like business in other stores, but who knew nothing personally of these goods, were of opinion that such a stock reduced from a larger one, would not be worth more than from 60 to 90 cents on the dollar. The deputy of the sheriff testified, that when proceeding to take the goods, he took with him a city auctioneer, to

assist in estimating their value, and that he took according to his jugd-
ment. The auctioneer also testified, that according to his judgment,
no more goods were taken than were necessary to cover the debt
sued for—that the stock was bad, much out of fashion and many rem-
nants. About a year after they were thus attached, the goods were re-
gularly sold at Targee's auction room, under order of sale obtained by
the deputy sheriff, at the instance of the plaintiffs, and produced only the
aggregate sum of $781 04.

Sherman was insolvent at the time of the sale to Beach & Eddy, and
it was known soon afterwards. The deputy who made the levy testified
that he consulted all the attaching plaintiffs concerning it, that whilst
he did not know that each acted for the others, or that they consulted
or concerted together, he supposed they did, and that Milburn, (his
pricipal,) knew of his action in the premises, and accepted and approved
it. Amongst the names of the plaintiffs in these attachments the record
shows those of Chouteau & Valle and James E. Yeatman, who from
having been defendants in the suit below, come with the sheriff as plain-
tiffs in error here.

Deeming the point respecting a new trial to be sufficiently disposed
of by the references which have been made by the counsel for the de-
fendants in error, this case must be affirmed or reversed upon consid-
erations connected with the instructions alone. Those given by the
court, at the instance of the plaintiffs, were, that "If the jury find for
the plaintiffs, and believe from the evidence that Milburn was sheriff of
the county of St. Louis, and that he or his deputy took the goods sued
for, under writ of attachment, and sued out by the other defendants
named in the declaration, and that said defendants in suing out their
attachments, acting in concert, directed Milburn or his deputy to attach
these goods, and that Milburn or his deputy, upon going to attach the
same, was notified by Beach and Eddy of their claims, and was warned
not to take them, and that thereupon he informed the other defendants
that he would not take the goods unless they indemnified him, and that
they thereupon did give him writings of indemnity, and, acting in con-
cert, directed him to attach the goods, and then he did so, the jury
should find a verdict against all the defendants together, and for dam-
ages allow the plaintiffs the value of the goods to them in their store,
as they were when the sheriff took them, and may add thereto interest
from the time of their taking, and also such other sum as smart money,
as the jury, under all the circumstances, may think right."

"If the jury find for the plaintiffs against Milburn, they will also find

against all the other defendants who, from the evidence, they shall find jointly acting with the defendant Milburn.

"If the jury believe from the evidence, that Osborne, as the deputy sheriff of Milburn, took the goods named in the declaration out of the possession of the plaintiffs, against their will, they ought to find for the plaintiffs against Milburn.

"If the jury believe from the evidence that Sherman signed the bill of sale to the plaintiff, given in evidence, then they are to find that thereby the plaintiffs became the owners of the property therein mentioned, as against the defendants in this action."

The court of its own motion instructed the jury in these words: "The counsel for defendant asks the court to instruct you, with reference to the damages to be assessed against Milburn personally, should you find him guilty, that the extent of his liability can only be the value of the goods, with interest from the time of taking them, if you should believe from the evidence, that in acting under the attachments he or his deputy did not carry out the instructions of all the attaching creditors, and that there was no abuse of authority on his part. Such is the general rule, the reason and policy of which are apparent, and commend themselves; and Milburn is entitled to its application, unless you shall be of opinion from the evidence in the case, that his conduct, in that behalf, forms an exception to the rule, and puts him beyond its protection, under the direction of the court about to be given. But the terms in which this rule is stated carry along with them a qualification broad enough to preclude its applicability to a trespass committed by an officer, under such circumstances as will authorize a jury to regard him as not having relied upon, or intending to claim its protection: as for instance, where at the time he is about to commit the trespass, he is apprised of the title or claim of a third party, and being warned or admonished in that respect, declines to act unless indemnified by the attaching creditors, seeks and procures such indemnity, and being thus backed by the creditors, and not till then, goes forward in the commission of the threatened trespass, in *such* case the jury are at liberty to consider him as having made common cause with the attaching creditors, as their instrument to do a wrong, and he cannot complain if he is held to have embarked in the same bottom with them, and equally liable with them for consequences. The loss of profits, in gains, which the plaintiffs would probably have realised but for the interruption of their business, occasioned by the trespass complained of, cannot, *as such*, be recovered in this action: but this instruction is not designed to restrict the jury to the value of the goods and interest, if, under the evidence

they shall view the case, under the instruction already given, as requiring *vindictive* damages."

And among the instructions prayed for by the defendants, the following were given:

"If the jury believe from the evidence that the plaintiffs in the several attachments did not act in concert, or upon any joint understanding between them, in directing the sheriff to levy upon the goods in question; and if they were not present at the time of the seizure of the goods, and did not afterwards, jointly and in concert with each other, assent to the said levy, then the jury cannot find the defendants jointly guilty of the trespasses complained of.

"To render the defendants jointly liable as trespassers, they must jointly and in concert have directed or assented to the seizure of the goods, before, or at the time of, or after it was made.

"That the defendant, Yeatman, is not liable for any damages suffered by the plaintiffs, in consequence of a seizure of plaintiff's goods, to satisfy the attachment of Chouteau & Valle, unless the said Yeatman was in some manner instrumental in causing the levy of Chouteau & Valle's attachment on said goods, or unless he acted jointly and in concert with Chouteau & Valle, in causing the two attachments to be levied at the same time on plaintiff's goods, or jointly and in concert with Chouteau & Valle, consented to the same after it was made."

Under these instructions the jury returned a verdict for two thousand four hundred and eighty dollars—the alleged excessiveness of which, being also complained of, will be considered in the same connexion:

No question is made as to the legal and moral rights of the plaintiffs below to make the purchase they did—*simply to save themselves.* The distinction between their transactions with Sherman, and that of Little with Chamberlin, (just passed upon by this court,) need scarcely be adverted to except to remark that the instruction which was given in that case, respecting the right of a debtor, in failing circumstances, to prefer a single creditor, or a portion of his creditors, to the others, and sell or transfer his effects accordingly, has been *too long* recognized and upheld to be now questioned or shaken. The transfer, therefore, which was made by Sherman to Beach & Eddy, and which the bill of sale (shewn to the sheriff's deputy) recites, is in consideration of, and to be applied to, an indebtedness far exceeding even the highest valuation which has been placed upon the goods, was upon its *face a valid transaction, and could of course only be disregarded by the attaching creditors, or by others acting under their indemnity, at their peril.*

It is, therefore, that amid the apparent conflict of authorities to which we have been referred, we are inclined to uphold even the strong and scarce judicial language adopted by the court, whereby to impress the jury that they were not restricted in measuring the damages of an apparently deliberate and aggravated *trespass*, to the mere value and interest upon the articles taken, but might take into consideration the concurrent facts in aggravation. In one of the cases before us, the court refused to interfere with the finding of the jury, under circumstances very analogous to those here, although the amount of their verdict was nearly three times the value of the property attached; and although we are not here remarking upon the verdict, but upon the instruction which it is complained may have contributed to produce it, .the analogy is so substantially the same as to render it unnecessary that the excess complained of in the verdict, be itself, *separately*, or further noticed. Deeming, therefore, that the instructions which were given by the court were substantially correct, and that they sufficiently comprehended the law and the justice of the case, neither the verdict which was found upon them, nor the judgment which was rendered in conformity with it, should be disturbed here for the reason that other instructions were refused. Where this court can perceive, from the whole record, that a case has been tried substantially *well*, and that the verdict, being for the right party, is not *clearly* exorbitant, it need scarcely repeat that it will not feel it to be its duty to interpose, merely for the purpose of directing it to be seemingly or technically tried a little *better*. Especially would it decline to do so, in cases like the present, where (as conceded in the argument) the verdict of two successive juries has been alike complained of, and where the probabilities preponderate, that the same, or a similar result, with additional expense, would be the probable if not the *inevitable consequence*. Whilst it is conceived that such a course would be not only not promotive, but subversive of the true dignity of the law, it is not less apparent that it is interdicted alike by the substantial interest of suitors, of the profession, and of the country at large.

The judgment of the circuit court is therefore affirmed.