LEO M. FRANK, Respondent, v. CURTIS & SON, Appellant.

Kansas City Court of Appeals, May 14, 1894.

1. **Fraudulent Conveyance**: PREFERENCE: DELAYING OTHER CREDITORS. If a creditor get from a debtor sufficient property to satisfy his claim, the transaction will be upheld, even though in so doing all the assets of the debtor be exceeded and even, too, though the debtor by giving such preference intended to hinder and delay other creditors. But the preferred creditor must have an eye single to his own security and not act for the purpose of assisting the debtor in perpetration of a fraud upon others.

2. ———: ———: ———: DEBTOR'S FRAUD. The fact that the debtor in making a preference may have the purpose of hindering and delaying other creditors in .the collection of their claims does not vitiate the preference, unless participated in by the preferred creditor, and an instruction declaring that the debtor's fraud would defeat the preference is *held* not to vitiate a verdict for the creditor, since it was injected into the case by the appellant.

3. ———: ———: ———: ———. The fact that the preferred creditor knows of the debtor's fraudulent intent as to its other creditors will not vitiate the preference and an instruction to that effect is approved.

4. **Trespass**: PUNITIVE DAMAGES. An intentional and malicious trespass warrants punitory damages, and, in this case, there was sufficient evidence of willful wrong to support an instruction on exemplary damages and said instruction is not vitiated by limiting the allowance of such damages to not exceed $500, since the petition asked for that amount, and that amount would not be excessive in this case.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Chase & Bartlett, J. M. Cole* and *P. D. Clear* for appellant.

(1)   The court erred in admitting the evidence of John Ochsly, deputy United States marshal, to the effect that Curtis' attorney sought to have Rice arrested for selling liquor without a license, for the reason that such act was without the scope of said attorney's employment, and was not known to, or subsequently ratified by, Curtis. *Ferguson v. Terry,* 1 B. Monr. 96; *Foster v. Wiley,* 27 Mich. 248; *Boulard v. Calhoun,* 13 La. Ann. 445; *Hagan v. Prov. & R. I. Co.,* 3 R. I. 88.   The first instruction given for plaintiff took from the consideration of the jury the good faith of the transaction. (2) He must have taken goods with the honest purpose of securing his debt, which precludes any privacy with Costello in an attempt to defraud others (if such intent existed). *Arnholt v. Harlwig et al.,* 73 Mo. 485; *Shelley v. Boothe,* 73 Mo. 74; *Hurd et al. v. Foster et al.,* 98 Mo. 297; *Peck v. Chouteau,* 91 Mo. 188; *Deering & Co. v. Collins & Son,* 38 Mo. App. 73; *Morgan v. Wood,* 38 Mo. App. 255.   (3) There is no such malice shown by the evidence as to authorize the second instruction given for plaintiff. The instruction should not have been given.   Only such damages as plaintiff actually sustained should have been recovered in this cause, as there was no evidence of oppression or malice on the part of plaintiff, Curtis & Son, simply an effort to collect a just debt. *Graham v. Railroad,* 66 Mo. 536; *Joice v. Bronson,* 73 Mo. 28; *Brown v. Cape Girardeau County,* 8 Mo. 154; *Hunt v. Railroad,* 94 Mo. 256; *Bryan v. Acee et al.,* 27 Ga. 87; *Willis Bros. v. McNeil,* 57 Tex. 467; *Franz v. Hilderbrand,* 45 Mo. 123.   Instruction number 1, of plaintiff and instruction number 2, given for defendant, are in direct conflict without reference to which is most

correct. *Nichols v. Jones*, 32 Mo. App. 657; *Mortinosky v. Hannibal*, 35 Mo. App. 70; *Stone v. Hunt*, 94 Mo. 475; *Krider v. Milner*, 99 Mo. 145; *Mead v. Spalding*, 94 Mo. 43; *Gatty v. Clark*, 28 Mo. App. 332.

*Wash. Adams, Doggett & Rosenzweig* for respondent.

(1) The evidence as to the United States marshal was in fact competent, because appellants failed to disclaim it; same was part of *res gestæ* and went to show the mind of attorney in whose hands defendants had put their matter and with whose conduct they are chargeable as will hereinafter appear. Further, the appellants in their cross-examination brought out the same facts, to which evidence brought out by themselves they can in no case be heard to object. *Green v. Walker*, 99 Mo. 68; *Sawyers v. Drake*, 34 Mo. App. 472; *Dodd v. Wilson*, 26 Mo. App. 46, etc.; *Taylor v. Penquite*, 35 Mo. App. 387; *Waddingham v. Waddingham*, 27 Mo. App. 596; *Davis v. Hilton*, 17 Mo. App. 319; *State to use v. Fiechman*, 13 Mo. App. 580; *Schluton v. Wiedenbroker*, 23 Mo. App. 440; *Star v. Wellman*, 11 Mo. 230; *Pavey v. Busch*, 3 Mo. 447; *Ely v. Porter*, 58 Mo. 158. (2) A debtor may give a preference to a particular creditor or set of creditors by a direct payment or assignment, if he does so in payment of his or their just demands, and not as a mere screen to secure the property to himself. The pendency of another creditor's suit is immaterial, and the transaction is valid, though done to defeat that creditor's claim. *Sharpe v. Johnston*, 59 Mo. 557; *Kuylsen v. McDonald*, 15 Mo. 416; *Murry v. Cason*, 15 Mo. 415; *State v. Benoist*, 37 Mo. 500; Bump on Fraud. Con., 350, 351; *Porter v. McDowell*, 31 Mo. 74. (3) Again appellants kindly cite authorities that do nothing if not sustain us as to whether or not we

were entitled to instruction for malice.  In this connection also we can best treat of damages for malice by servant referred to.  (A 9 and B 1.)  *Trauerman v. Lippincott*, 39 Mo. App. 488.  In the following cases also malice is defined and recovery was allowed in punitive damages against a master for the act of the servant done during and within scope of his employment.  *McGarsy v. Railroad*, 36 Mo. App. 340; *St. Clair v. Mo.*, 29 Mo. App. 76; *Graham v. Pacific*, 66 Mo. 536; *Travers v. Railroad*, 63 Mo. 421.  The application of malice to wrong levies is further sustained as follows.  In these cases it was held there was no malice in fact, but that, if there had been, instruction thereon would have been proper and necessary. *State v. Bacon*, 24 Mo. App. 403;  *Walker v. Borland*, 21 Mo. 292; *Buckley v. Knapp* (libel), 48 Mo. 152; *Bacon v. Donell*, 111 Mo. 510.  (4) As to conflict of instructions, one given for plaintiff and one for defendants, this resolves itself into inquiry, which is right.  On the foregoing authorities we contend that ours for plaintiff states the law correctly.  The words "only" and "solely" have been explicitly approved.  *State v. Barr*, 45 Mo. App. 102; *Nelson v. Creath*, 45 Mo. App. 171; *Vail v. K. C.*, 28 Mo. App. 378; *Morris v. Railroad*, 79 Mo. 368; *Blackwell v. Baily*, 1 Mo. App. 328; *Schmitz v. St. L.*, etc., 24 S. W. Rep. 477.

GILL, J.—At and before the dates hereinafter named plaintiff Frank was conducting a wholesale liquor business in Cincinnati.  He had a branch house at Kansas City operated under the name of Cincinnati Liquor Co., which was managed by Max Rice.  One Costello had a saloon on West Ninth street, Kansas City, and on November 3, 1891, was indebted to the plaintiff's branch house, as also to one Nicol, to Mayes,

to defendant Curtis and others. Mayes had a chattel mortgage on the saloon property.

On said November 3, Rice went to Costello's saloon and found it in the possession of the constable who had levied on the same under an attachment sued out by Nicol. It was then, in order to secure his claim, Rice purchased the saloon from Costello, agreeing in payment therefor to put in the plaintiff's claim, to pay off the Nicol attachment and the mortgage claim of Mayes. From the evidence it unquestionably appears that the aggregate of these debts was in excess of the value of the property. Costello was paid nothing—the plaintiff, by his agent Rice, simply assuming and paying these claims for the entire property. That these several claims were genuine obligations of Costello stands undisputed. Immediately on getting possession of the saloon plaintiff's agent Rice added something to the stock and put up a notice advising the public of the change in ownership.

On the afternoon of the next day (Nov. 4) defendant Curtis brought an attachment against Costello and, under rather aggravating circumstances, levied upon and took the saloon stock away from the plaintiff's agent. Thereupon this suit in trespass was brought, wherein plaintiff claimed $1,000 damages, compensatory and punitive. On a trial below there was a verdict and judgment for plaintiff in the sum of $400 and defendant appealed.

The matters complained of relate mainly to the court's action in giving and refusing instructions. After a careful consideration of all these we fail to discover any just cause for such complaints.

This is another one of those instances of a race between the creditors of an insolvent; and the rule holds that the advantages secured by the swift and diligent creditor will not be disturbed so long as he is not

implicated in any fraud of the common debtor. If one or more creditors shall first arrive on the ground and get from the debtor sufficient of the property to satisfy their claims, the transaction will be upheld, even though in so doing all the assets of the debtor be exhausted, and even, too, though the debtor by giving such preferences intended to hinder and delay the other creditors, *provided* only that the favored creditor shall have taken the preference with an eye single to his own security, and not for the purpose of assisting the insolvent debtor in the perpetration of a fraud on others.

In the court's instructions we discover no substantial departure from these well understood rules of law, except in the giving of defendant's instruction number 2, wherein the jury were told that if they believed from the evidence that the property was transferred to the plaintiff by Costello for the purpose of hindering and delaying any creditors of said Costello in the collection of their claims then they should find for the defendant. It is scarcely worth while to stop and point out the vice of this instruction. It has no place in a suit of this character. In effect, it advised the jury that if, when the plaintiff accepted this saloon stock in payment of his and the two other claims, the debtor, Costello, entertained the design of hindering or delaying some other creditor, then such transfer would be void and the property might be taken from the plaintiff, though he acted in entire good faith and without even any *notice* of such fraudulent purpose on the part of Costello. Said instruction was manifestly erroneous. And the inconsistency in the court's declarations of law, of which defendant's counsel complain, was brought about by the wrongful injection of this instruction into the court's charge. And being responsible for this want of harmony defendant is now in no condition to complain.

We notice the criticisms made on plaintiff's first instruction but fail to see how the jury could have been misled as to the law applicable to the case. It told the jury that if plaintiff accepted the property from Costello in payment of his claim then it was a valid preference "although said Costello was insolvent and was indebted to said defendants and intended to hinder, delay or defraud his creditors, and although said Rice knew of such fraudulent intent, *provided* said Rice acted *solely* with a view to secure payment of plaintiff's debt." This has been the admitted law of the state for many years, especially since the decision of the supreme court in *Shelley v. Boothe*, 73 Mo. 74.

There was no error in the court's advising the jury that if they found the defendant guilty of an intentional and malicious trespass then they might award the plaintiff punitory or exemplary damages. There was evidence tending to prove a willful wrong against the plaintiff's property, attended, too, by circumstances of aggravation and oppression. Under such circumstances the law not only permits a recovery for the value of the property taken, but in addition will warrant a further sum as exemplary damages. Field on Damages, sec. 69; *Milburn v. Beach*, 14 Mo. 104. The circumstances attending the levy of defendant's attachment were much more oppressive and aggravated than in the case just cited. When defendant Curtis and his attorney went to the saloon in possession of plaintiff's agent they were warned of the fact of plaintiff's purchase; but they persisted, and without any apparent cause to question its validity, recklessly and in utter disregard of plaintiff's claim, seized everything tangible and carried it away. And at the same time, too, for the apparent purpose of frightening plaintiff's agent into submission, the United States marshal was called on to arrest the agent for having conducted the liquor busi-

ness without license.    It is true that this call on the
United States authorities was by defendant's attorney
in charge of the case; but the evidence read in light of
the circumstances fully justifies the belief that such
oppressive act was by the *consent*, if not by the express
direction of the defendant.

Defendant complains that in the court's instruc-
tion to the jury they were told that they might allow
exemplary damages "not exceeding $500," etc.    There
was no harm in thus advising the jury.    This was the
amount of vindictive damages asked in the petition;
and it was not of such an excessive amount as would
even meet the disapproval of the cases cited in defend-
ant's brief.

Discovering no substantial error in the record, the
judgment will be affirmed.    All concur.