HOGAN, Appellant, v. CITY OF ST. LOUIS et al.

Division One, June 2u, 1903.

1. **Foreign Corporation:** CONTRACT MADE ELSEWHERE. A contract with a foreign corporation entered into outside this State is not transacting business within this State within the meaning of our corporation laws, but if a lawful contract according to the laws of the State where made, not until it comes here to perform that contract can this State invoke against the company the penalty provided by our laws to be imposed on a foreign corporation which undertakes to do business within this State without having first obtained a license from the Secretary of State permitting it to do so.

2. ————: ENTERING INTO CONTRACT HERE. Our statutes do not mean that a foreign corporation must establish a public office within this State, where books are kept and processes may be served, and must have a license from the Secretary of State to do business within this State, before it éan enter into a contract to do business within the State; and a city which enters into a contract with such foreign corporation for the lighting of its streets, can not be enjoined from carrying out such contract on the ground that it is illegal.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher*, Judge.

AFFIRMED.

*Grover & Grover* for appellant.

(1) The petition in this case shows that plaintiff sues as a "citizen and property-owner and taxpayer for himself, and on behalf of all others similarly interested," thus evidencing the purpose of preventing a multiplicity of suits and presenting a proper case for equitable interposition, for the right to intervene for the purpose of preventing a multiplicity of suits is a distinct head of equity jurisdiction. Ewing v. Board of Education, 72 Mo. 441; State v. Saline County, 51 Mo. 350; Matthis v. Cameron, 62 Mo. 506; 1 Story, Eq.

Jur., 70; Mitford, Eq. Pl. (Jeremy), 144, 145; 2 High,
Inj. (3 Ed.), sec. 1142; Cooley, Tax. (2 Ed.), 769;
Damschroeder v. Thias, 51 Mo. 105.; Wagner v. Meety,
69 Mo. 151; Hooper v. Ely, 46 Mo. 505; Steiner v.
Franklin County, 48 Mo. 167; Ranney v. Bader, 67
Mo. 479; Newmeyer v. Railroad, 52 Mo. 81; Ruby v.
Shane, 54 Mo. 207; Dennison v. Kansas City, 95 Mo.
429; Lilly v. Tobbein, 103 Mo. 488; Black v. Ross, 37
Mo. App. 257; Black v. Cornell, 30 Mo. App. 646.    (2)
The pretended contract entered into between the city
of St. Louis and the Kern company is illegal and void,
for that at. the time when its bid was submitted to the
Board of Public Improvements, and at the time the
Board of Public Improvements made an award in its
favor, and at the time when the alleged contract and
the bond to secure the performance thereof were ex-
ecuted and delivered, and at the time when the alleged
contract was confirmed and the alleged bond approved
by the City Council, the Kern company was an alleged
corporation under the laws of New Jersey, and had not
obtained a license to "do business" in Missouri.    A
foreign corporation doing business in another State is
exercising a franchise which depends solely upon the
comity of that State, and the corporation enters therein,
transacts business and exercises such a franchise only
upon the terms prescribed by the laws of that State, in
short, it may be prohibited altogether, and in like man-
ner the terms and conditions under which it may enter
and lawfully transact business may be definitely fixed.
Any failure to comply with the terms and conditions
necessary to secure the exercise of the privilege or fran-
chise makes void any contract attempted to be made.
At home the corporation has only such powers as are
expressly granted or which flow therefrom by necessary
implication—abroad it has only what the foreign State
chooses to grant and solely upon the terms and condi-
tions prescribed.    State ex inf. v. Trust Co., 144 Mo.
586; Daggs v. Ins. Co., 136 Mo. 382; Lamb v. Lamb, 13

Nat. Bank Reg. 17; Oil Co. v. Wemple, 44 Fed. 24; People v. Wemple, 134 N. Y. 64; Com. v. Oil Co., 101 Pa. St. 119; Farrier v. New Eng. Mort. Co., 88 Ala. 275; Mullen v. Amer. Co., 88 Ala. 288; Christian v. Am. Co., 89 Ala. 198; Ginn v. New Eng. Co., 92 Ala. 135; Ins. Co. v. Wright, 55 Va. 526; Bank v. Page, 6 Ore. 431. A foreign corporation coming into the State to do business must not only qualify, but keep itself qualified. Ins. Co. v. Story, 41 Mich. 402. It is a general rule of comity that a contract, illegal under the law of the place where made, will be held illegal and void everywhere. Story, Confl. Laws, sec. 243; Hyde v. Goodenow, 3 N. Y. 266; Ford v. Buckeye Ins. Co., 6 Bush (Ky.) 133; In re Comstock, 3 Sawyer 218. Nor is there any right of recovery upon the bond given to secure such a contract. Thorne v. Ins. Co., 80 Pa. St. 15; Ins. Co. v. Bales, 92 Pa. St. 352; Daniels v. Barney, 22 Ind. 207; Barneys v. Daniels, 32 Ind. 19; Cassady v. Ins. Co., 72 Ind. 95; Am. Co. v. Railroad, 37 Fed. 242; In re Comstock, supra.

*Chas. W. Bates* and *Wm. F. Woerner* for respondents.

(1) The execution of the contract in controversy did not constitute the doing of business within the meaning of the statutes respecting foreign corporations, and was not prohibited by them. (a) It was an isolated act of a corporation not located in Missouri at all, and therefore was not the doing of business within the meaning of said statutes. Woolen Mills v. Edwards, 84 Mo. App. 450; Blevins v. Fairley, 71 Mo. App. 262; Steam Heating Company v. Gas Company, 60 Mo. App. 155; Cooper Mfg. Co. v. Ferguson, 113 U. S. 734; 6 Thompson on Corp., sec. 7936; note 24 L. R. A. 295-297. (b) The contract was merely a preliminary step taken with a view to subsequently engaging in business. (c) Where the contract entered into, or the act done, is merely incidental to the corporate purposes, and does

not constitute part of the regular course of the business of the corporation, it does not come within the provisions of the foreign corporation statutes. Coal and Mining Co. v. Ladd, 160 Mo. 442. (2) The foreign corporation statutes were enacted to protect the citizens of this State. To support appellant's contention that the contract in controversy is void, is to work great injustice to citizens and municipalities—agencies of the State itself. If such a preliminary contract as the one in controversy is void, then no foreign corporation can ever successfully compete for municipal work, and the cities of the State will hereafter be deprived of any outside bidding and competition. Rand Co. v. Stern, 129 Mo. 381. (3) The contract attacked by the petition, even though executed contrary to the provisions of the statute, is valid, at least as against everyone but the State. Edison General Electric Co. v. Canadian, etc., Co. (Wash.), 24 L. R. A. 315. (a) An objection to the validity of said contract can only be raised by the State in a direct proceeding. St. George Church v. Branch, 120 Mo. 243; Church v. Tobbein, 82 Mo. 418; St. Louis v. Shields, 62 Mo. 247; Ins. Co. v. Smith, 117 Mo. 289; Hall v. Bank, 145 Mo. 425; 2 Morawetz on Corp. (2 Ed.), sec. 665. (b) Such defect can not be taken advantage of collaterally by a private person. Fritz v. Palmer, 132 U. S. 293. (c) A foreign corporation may even render itself subject to a penalty, and yet its contracts will be valid and enforcible against it. Ins. Co. v. Railroad, 149 Mo. 178. (d) The remedies and penalties for failure of a foreign corporation to comply with the statutory requirements respecting the doing of business in this State are pointed out by the statutes, and these remedies and penalties are the only consequence of non-compliance with the statutes. Said statutes do not declare, either expressly or by implication that a contract made by such corporation without compliance with said statutes shall be void. R. S. 1899, secs. 1024-1026 and secs. 1315-1318; Ins. Co. v. Railroad,

supra; Ins. Co. v. Walsh, 18 Mo. 238. (e) The contract in controversy does not provide for nor contemplate the violation of any law, and the consideration is not tainted with any illegality. (f) At all events, the contract is enforcible against the foreign corporation, which can not plead its own failure to comply with the law to defeat its own contract, and this fact defeats the objection thereto of a citizen and taxpayer. (4) Although the foreign corporation has not complied with the statutory provision, still its capacity to make the contract in controversy can not be questioned by the plaintiff. Bank v. Gorten, 34 Mo. 119; Lead Co. v. Grote, 80 Mo. App. 265; Smith v. Shelley, 12 Wall. 361; Telephone Co. v. Telephone Co. (Ky.), 72 S. W. 4.

VALLIANT, J.—Plaintiff, as a resident taxpayer of defendant city, brings this suit in equity to enjoin the city, its officers and their co-defendant, the Kern Incandescent Gas Light Company (hereinafter called the Kern Company) from carrying out what the petition calls a pretended contract alleged to have been made by the city with the Kern Company for lighting the streets.

According to the petition, on January 11, 1900, the Board of Public Improvements, acting under authority of city ordinance 19892, approved December 7, 1899, advertised for bids for a contract to light a large part of the city. In answer to the advertisement the Kern Company submitted a bid which was accepted by the board. Whereupon a contract was entered into between the city and the Kern Company, whereby the latter became obligated, for certain consideration, to furnish the light specified, and to secure the faithful performance of its contract the Kern Company, as the contract required, executed its bond with security payable to the city in the penalty of two hundred thousand dollars.

The contract and bond are exhibited with the petition, the details of which it is unnecessary to set out in this statement.

The petition alleges that the Kern Company is a corporation organized under the laws of New Jersey with a nominal capital stock of $12,000, whereof, however, only $1,000 had been subscribed and $500 paid; that at the time this pretended contract was entered into and this bond given to secure its faithful performance this foreign corporation had not complied with the statute requirements of this State prerequisite to its admission into the State with authority to do business here, that is, had not complied with the requirements of sections 1025, 1026, 1315, 1316, 1317 and 1318, Revised Statutes 1899, but that after the contract and bond had been executed the corporation, preparatory to entering upon its performance, did file its statement and receive from the Secretary of State a license as required by section 1025. For its failure to comply with the terms of the statute before executing the contract the plaintiff in his petition draws the conclusion that the alleged contract and bond are void and upon that ground he seeks to have their performance or enforcement enjoined. The petition is quite lengthy, but the force of it is contained in what is above stated. The city and the Board of Public Improvements filed a demurrer as did also the Kern Company. The grounds of the demurrers were, that the plaintiff had not legal capacity to maintain the suit, and that the petition did not state facts sufficient to constitute a cause of action. The demurrers were sustained, and, plaintiff declining to plead further, final judgment for defendants was entered, whereupon plaintiff brings the cause here for review.

Section 1024, Revised Statutes 1899, declares: "Every corporation for pecuniary profit formed in any other State, Territory or country, before it shall be authorized or permitted to transact business in this State, or to continue business therein if already established, shall have and maintain a public office or place in this State for the transaction of its business, where

legal service may be obtained upon it, and where proper books shall be kept to enable such corporation to comply with the constitutional and statutory provisions governing such corporations,'' etc.

Section 1025 requires every such corporation to file in the office of the Secretary of State a copy of its charter and a sworn statement by its chief man in this State, showing the proportion of its capital stock employed in its business here, and to pay into the State treasury on that proportion of its stock, incorporating taxes and fees equal to those required of domestic corporations upon their organization, whereupon the Secretary of State is required to give the corporation a certificate that it has complied with the laws of this State and is authorized to do business here.

Section 1026 imposes as a penalty for failure to comply with those requirements a fine of $1,000, and disability to maintain a suit in any court of this State.

Section 1315 forbids any such corporation to do business in this State ''without first procuring a license therefor, which license shall be granted by the Secretary of State.''

Section 1316 forbids the Secretary of State to issue such license to any corporation ''if (upon inspection of its charter) it shall appear that such company or corporation could not organize under the laws of this State.''

When the Kern Company entered into the contract in question it did not have an office or place of business in this State as required by section 1024, and it had not taken out a license to do business here as provided in section 1025, and for the failure of the corporation to comply with those conditions the plaintiff says this contract is void. That is the main proposition upon which the plaintiff's case is bottomed.

The effect of the demurrers is to admit the facts pleaded, but not the conclusions drawn by the pleader. It does not appear on the face of the petition where

the contract was entered into, whether the Kern Company sent an agent to St. Louis and entered into the contract there, or the city sent an agent to New York and entered into the contract there. The contract filed as an exhibit seems to indicate that it was executed, on the part of the Kern Company at least, in New York. If that is the case, then, even taking plaintiff's interpretation of the term, the corporation did not "transact that business" in this State, and if it was a lawful contract where it was made, the statute of Missouri would have no influence upon it, until the party should come to this State to perform it. Then the corporation would be in the act of transacting or attempting to transact business here, and before it could lawfully do so it would have to comply with our laws. But we do not consider it material whether the contract was made in St. Louis or in New York; we refer to the fact merely to illustrate the difference (in relation to the term "transact business") between entering into a contract to do an act and the performance of the act. The one may be lawful *per se* and the other lawful only on condition. Of course, a contract can not be lawfully made to do an unlawful act, but a contract may be lawfully made to do an act which the contracting party can lawfully do only when he shall have complied with conditions or satisfied other demands, and his unconditional contract to do it carries with it the obligation to comply with those conditions or satisfy those demands; he assumes the risk of being able to do so. Therefore, when the Kern Company entered into this contract, although it could not lawfully perform it without conforming to the conditions of the Missouri statutes, yet the contract carried by implication the obligation on the part of the company that it would conform to those conditions, and a neglect to do so, resulting in a failure to perform, would have been a breach of the contract.

Now, when our statutes say that a foreign corpora-

tion shall not "transact business" here until it establishes a public office in this State where books are kept and process may be served, and until it pays its quasi-incorporation tax and takes out its license, do they mean that the corporation must do all those acts before it can lawfully enter into a contract to do any business here? Does our law mean that when advertisements inviting bids on public or private works in this State are read by foreign corporations they are to understand that they have not the right to bid and have their bids accepted unless they shall have already complied with the terms of our statute to enable them to transact business here? No, that is not the meaning of our statutes. No such policy of exclusion has ever been shown in any of our legislative acts; foreign corporations have always been invited and encouraged to come. The obtaining of a desirable contract is sometimes an inducement for a foreign corporation to come into the State; it is not bound to establish itself here before it can obtain such a contract.

Entering into a contract like the one in question undoubtedly is "transacting business" within the unlimited meaning of the term, but that is not the sense in which the term is used in the statute just quoted. As there used it means carrying on the work for which the corporation was organized and in its application to the facts of this case it means performing the work called for by the contract.

The Kern Company under the conditions stated in the petition had the right to enter into the contract in question and we hold it to be a legal and valid contract.

These views are sustained by the following authorities cited in the brief of the counsel for the respondents: 6 Thompson on Corp., sec. 7936; 24 L. R. A. note to page 295, et seq.; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727; Coal & M. Co. v. Ladd, 160 Mo. 435.

There are other questions discussed in the briefs,

but we deem it unnecessary to consider them because the point above decided is the end of the case.

The judgment is affirmed. All concur.