HANDLAN-BUCK MANUFACTURING COMPANY, Appellant, v. WENDELKIN CONSTRUCTION COMPANY, Defendant, ALEXANDER, Interpleader, Respondent.

**St. Louis Court of Appeals, April 16, 1907.**

1. **FOREIGN CORPORATIONS: Contracts when not Authorized to do Business in this State.** A contract made in Missouri by a foreign corporation which has not complied with the Missouri laws authorizing it to do business, must be treated as void in an action on such contract by the corporation.

2. ———: ———: **Executed Contract.** But where a contract made in Missouri by a foreign corporaion, which is not authorized to do business in this State, is entirely executed, it can not be attacked by a stranger; the validity of a bill of sale made under such circumstances by a foreign corporation, when possession has been delivered, cannot be attacked by an attaching creditor on the ground that such corporation was not authorized to do business in this State.

3. ———: **Mortgage by Foreign Corporation: Prior Creditor.** The provision of section 1024, Revised Statutes 1899, that a mortgage made by a foreign corporation to secure a debt created in another State, shall not take effect as against a citizen of this State who is a creditor, is not available except to a citizen creditor to whom the corporation owes a debt at the time the mortgage is recorded.

4. **FRAUDULENT CONVEYANCES: Intent to Defraud.** A transfer of property by a debtor for the purpose of preferring one creditor over others, is not void as to other creditors unless it was made with intent to hinder, delay and defraud such creditors, and the transferee participated in the fraudulent purpose; the mere fact that the effect of the transfer is to hinder and delay such creditors will not make the preference voidable.

5. ———: ———: **Disjunctive Declaration.** Where an issue on trial was whether a preference was fraudulent as to creditors

and where the evidence was contradictory as to whether there was a fraudulent intent, the refusal by the court of a declaration to the effect that the transfer was fraudulent if the "object or effect" was to hinder, delay or defraud creditors, was not error as indicating that the court refused to pass upon the issue of fraud.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*W. Christy Bryan* for appellant.

(1) The interpleader must recover on the strength of his own title, if at all, and the burden of proof is on him to establish it by competent, legal evidence, whether in the form of written instruments or oral testimony, and the court erred in refusing a demurrer to the evidence at end of interpleader's case. Miller v. Ammon, 145 U. S. 421; Geitt v. Mercantile Co., 74 Mo. App. 209; Brownell & Wright v. Barnard, 139 Mo. 142; Plano Mfg. Co. v. Cunningham, 77 Mo. App. 376; Paper Co. v. Pub. Co., 79 Mo. App. 504; McDermott v. Sedgwick, 140 Mo. 172; School District v. Sheidley, 138 Mo. 672. (2) There was evidence to the trier of fact on the question of fraud and the court erred in refusing instructions numbered 12, 12a and 12b. The interpleader knew beyond any peradventure of a doubt that the bill of sale taken with the conduct and course of business of the Wendelkin Company, of which he was fully cognizant, was a fraud on Wendelkin Company's creditors. He will not be considered an innocent party who stands by, sees an insolvent purchase materials on a fictitious credit, and then takes over the unpaid-for property so purchased. Dry Goods Co. v. Bank, 81 Mo. App. 280; Plow Co. v. Sullivan, 158 Mo. 440; Bank v. Tobacco Works Co., 155 Mo. 602. (3) The court erred in refusing instructions numbered 6, 8 and 11, because the uncontradicted evidence showed and Wendelkin admit-

ted and interpleader conceded the Wendelkin Company was a foreign business corporation, not of the exempt class, doing business in this State without having, either first, last or any other time complied with the laws of this State and it could not make a valid conveyance, especially preferring a non-resident creditor. R. S. 1899, secs. 1024, 1026, 1315; A. Borth & Co. v. Wiegand, 79 Pac. 570; Lamb v. Lamb, 6 Biss. (U. S.) 420; Farrior v. Mortgage Co., 88 Ala. 275; Insurance Co. v. Baueole, 143 Ill. 459; Daniels v. Barney, 22 Ind. 207; Cassaday v. Insurance Co., 72 Ind. 95; Bridge Co. v. Silk Co., 25 Wend. 648; Meyers Mfg. Co. v. Wetzel, (Tenn.), 35 S. W. 896; Lumber Co. v. Thomas, 92 Tenn. 587; Runyan v. Coster, 39 U. S. ·(Peters) 121; Insurance Co. v. Prescott, 42 N. H. 547, 80 Am. Dec. 123; Rubber Co. v. Shoe Co., 132 F. 398; Nursery Co. v. Aughenbaugh, 100 N. W. 1101; Terra Cotta Co. v. Poerschke, 90 N. Y. S. 333, 45 Misc. 358; Fireproofing Co. v. Beilhartz, 88 S. W. 512; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727; Bank v. Earle, 13 Peters 519; Paul v. Virginia, 8 Wall. (U. S.) 168; Ducet v. Chicago, 10 Wall. 410; Construction Co. v. Railroad, 53 Atl. (Penn.) 533; Williams v. Scullin, 59 Mo. App. 30; Ehrhardt v. Robertson, 78 Mo. App. 412; Blevins v. Fairley, 71 Mo. App. 259; Emerich Co. v. Sloane, 95 N. Y. S. 39, 46 Misc. 513; Iowa Falls Mfg. Co. v. Farrar, 104 N. W. 449; Miller v. Ammon, 145 U. S. 421; Glue Co. v. Glue Co., 187 U. S. 613; McCanna & Fraser Co. v. Surety Co., 76 Fed. 420; Fruit Co. v. McKinney Bros. & Co., 103 Mo. App. 304.

*Brownrigg & Mason* and *Wilson & Dempsey* for respondents.

(1) If the issue of fraud may be regarded as raised, it was decided against the appellant by the judge sitting as a jury upon ample evidence. Crothers v. Busch, 153 Mo. 606; Wall v. Beedy, 161 Mo. 637; Claflin v. Sylvester, 99 Mo. 276. (2) Our statutes with reference

to foreign corporations set forth clearly what are to be the consequences and penalities for the failure of any corporation to comply therewith. It is not provided that contracts of a non-complying corporation are void. The provision is merely that no action can be maintained upon such contract by the corporation until it complies with the law, and the statute has not been so construed as to attach to such non-compliance other consequences not prescribed by the statute. Carson-Rand Co. v. Stern, 129 Mo. 381; Lumber Co. v. Simms, 101 Mo. App. 569; Lumber Co. v. DeLisle, 107 Mo. App. 615.

STATEMENT.—The Handlan-Buck Manufacturing Company is a corporation organized under the laws of the State of Missouri and the Wendelkin Construction Company is a corporation of the same character organized under the laws of the State of Texas, but engaged, to some extent, in business in the State of Missouri at the time of the events to be related and without having complied with the statutes under which foreign corporations are permitted to carry on business here. The main business of the Wendelkin Company was railroad construction work. For purchases of tools and material to be used in such work, it had incurred an indebtedness to the Handlan-Buck Company of $1,025.63. This indebtedness was contracted at different times over a period extending from January to June, 1902. It constitutes the subject-matter of the present action, which was instituted by attachment in the circuit court of Cape Girardeau county, July 15, 1902. The petition is the one in common used in actions on accounts for merchandise sold and delivered. The grounds of the affidavit for attachment need not be stated, as the appeals are from judgments on the merits on interpleas which were filed for the attached property. There were three such interpleas. One was filed by C. H. Alexander for some specific articles of personal property, namely: boilers, smokestacks, drills and fittings for boilers. Another in-

terplea was filed by the firm of W. D. Wylie & Co. for certain other personal property, consisting of twenty-eight scrapers, four dump-carts, two pumps, fifty shovels, fifty picks, and one lot of blankets and quilts. All the articles claimed in those two interpleas had been seized under the writ of attachment as the property of the Wendelkin Company. The third interplea was filed by the same C. H. Alexander who filed the first one, and concerned, not articles of property on which the writ had been levied, but a debt due from the firm of Johnston Bros.' to the Wendelkin Company, which debt had been attached by garnishment service under the writ of attachment in favor of the Handlan-Buck Company.

In their answer to interrogatories propounded to them, those garnishees stated, in effect, that they were railroad contractors and had sublet to the Wendelkin Company a portion of a contract which they held to do certain construction work on the St. Louis, Memphis & Southeastern Railroad extension from Cape Girardeau to St. Louis; that they had reserved a certain per cent of the money earned by the Wendelkin Company in the progress of the work, to protect them (Johnson Bros.) against liens of laborers and materialmen; that the balance owing the Wendelkin Company was $1,555.14, and the garnishees asked the court to be allowed to pay the amount into court in order that it might be determined whether it was held under the plaintiff's atachment lien, or by virtue of a prior assignment of it by the Wendelkin Company to C. H. Alexander, of which assignment the garnishees had been duly notified before they were garnished. In the first two interpleas Alexander and Wylie & Co., the respective interpleaders, merely stated for a cause of action that the property described in the respective interpleas was not the property of the Wendelkin Company at the time the writ was levied and that, at that time, the latter company had no right, title or in-

terest in it, but it was the property of the interpleaders. In his interplea for the debt garnished in the hands of Johnston Bros. Alexander averred that the Wendelkin Company had no demand against Johnston Bros. at the time said firm was garnished and had no right, title, interest or claim against them, because, prior to the garnishment, the Wendelkin Company, for a valuable consideration, had transferred and assigned to him (Alexander) the debt due from Johnston Bros. of which Johnston Bros. had notice on June 25, 1902, which date was nearly a month prior to the service of the writ of garnishment on July 19.

In its answer to each of the three interpleas, the Handlan-Buck Company denied every allegation in the interpleas and alleged that the Wendelkin Company, under whom the interpleaders claimed title to the several assets in dispute, was a foreign corporation, organized and existing under the laws of the State of Texas for the purpose of pecuniary gain to its stockholders; that it had engaged in business in this State without complying with the laws thereof, particularly sections 1024, 1025, 1026 and 1315 of the Revised Statutes; that therefore, the Wendelkin Company could not make a valid transfer of its property, engage in any business in this State, or maintain a suit or action therein; and that the interpleaders, who claimed title under grants and assignments from the Wendelkin Company could not maintain their interpleas. For those reasons plaintiff asserted that the lien of its attachment against the several assets of the Wendelkin Company should be enforced and given priority over the title asserted by the interpleaders.

Replications were filed to the answers. In Alexander's first replication, relating to the personal property attached, he denied every allegation of the Handlan-Buck Company's answer, except such as were expressly admitted. He then averred that said Handlan-Buck Company, prior to June 27, 1902, had contracted and

dealt with the Wendelkin Company in the State of Missouri as a corporation, and that, therefore, said Handlan-Buck Company was estopped from denying the right of said Wendelkin Company to carry on business and contract and deal as a corporation in the State of Missouri; that said Handlan-Buck Company had brought suit by attachment against the Wendelkin Company as a corporation, and had attached the very goods in controversy between the Handlan-Buck Company and the interpleaders; wherefore said Handlan-Buck Company was estopped to deny that it paid its indebtedness to the interpleader by turning over to him the goods in controversy, and estopped to deny interpleader's right to collect said indebtedness by accepting the property sold and transferred to him by the Wendelkin Company in part payment of it. Further replying Alexander alleged that on June 27, 1902, the Wendelkin Company was indebted to him in the sum of $22,000; that on said date said Wendelkin Company owned and was in possession of the goods and chattels described in a certain bill of sale executed by it to Alexander and that among the goods mentioned in said bill of sale were those in controversy; that said chattels were of the value of $9,950, and in consideration of the payment, to that extent, of the Wendelkin Company's indebtedness to the interpleader, said company sold and delivered said goods to the interpleader; that the validity of that conveyance could not be attacked by the Handlan-Buck Company in a collateral way, as was attempted in the answer filed, and the statutes of the State of Missouri pleaded by the Handlan-Buck Company as invalidating said contract, had no application under the facts of the present case and did not affect interpleader's right to collect his indebtedness by accepting a transfer of the property.

The replication of W. D. Wylie & Co. to plaintiff's answer to said Wylie & Company's interplea contained the same pleas of estoppel against the plaintiff set up in

Alexander's replication. Wylie & Company further alleged that on July 11, 1902, Charles H. Alexander, who was the owner of the goods and chattels claimed by them, conveyed and delivered to them said goods and chattels; that said conveyance from Alexander could not be attacked in this collateral proceeding in the manner attempted by the Handlan-Buck Company, and that the statutes relied on by the latter company in no way affected the title of Wylie & Company as interpleader.

Alexander's replication to plaintiff's answer in the garnishment matter pleaded an estoppel against plaintiff on the same grounds stated in his other replication and further alleged that on June 21, 1902, interpleader had lent the Wendelkin Company $6,000 as a special fund to be used in purchasing mules; that the last-named company then owed the Phoenix Powder Company $1,500 and was desirous of using part of the sum of $6,000 advanced by interpleader in payment of said debt; that Johnston Bros., the garnishees, then owed Wendelkin Company $1,545, which was the same indebtedness paid into court; that in consideration of interpleader's consent to the diversion of enough of said specified fund to pay the Wendelkin Company's debt to the Phoenix Powder Company, the Wendelkin Company, on June 21, executed and delivered to interpleader (Chas. H. Alexander) an assignment in writing of the balance then owing by Johnston Bros. to said Wendelkin Company, and Johnston Bros. were duly notified of such assignment on June 23, 1902, prior to the garnishment. The replication alleged that by reason of the premises said assignment to interpleader could not be attacked by the Handlan-Buck Company in the manner attempted, and denied that the statutes pleaded by the last named company had any applicability to the facts of the case. The pleadings, whose substance we have recited, made up the issues between the plaintiff and the interpleaders.

The Wendelkin Construction Company is a Texas

organization and Charles H. Alexander is a citizen of Texas, doing business in the city of Dallas. In the fall of 1901, the Wendelkin Company had some contracts with railroad companies for construction work and applied to Alexander for a loan of funds wherewith to carry on the work. He extended credit to it in the way of loans and endorsements until April, 1902, it owed him more than $22,000. The proof leaves no doubt that this indebtedness was genuine and created in good faith. It appears that on January 14, and 21, 1902, the Wendelkin Company obtained contracts for grading and construction work on the line of the St. Louis, Memphis & Southeastern Railroad in Cape Girardeau county, Missouri. These contracts were sublettings under Johnston Bros. of St. Louis, who held the main contract with the railroad company. On September 13, 1901, the Wendelkin Company had obtained a subcontract for construction work on the International and Great Northern Railroad. The latter work was to be done, we suppose, in Texas; but the work on the St. Louis, Memphis & Southeastern Railroad was to be done in Missouri. It appears from the evidence that some time in September, 1901, the Wendelkin Company had secured Alexander for the funds he advanced and to be advanced by him, by giving him a chattel mortgage on its assets. That mortgage was executed in Texas and is not contained in the present record. On March 20, 1902, the Wendelkin Company executed another chattel mortgage to Alexander on its tools, livestock, implements, construction material and all its other assets, which instrument plaintiff introduced. Among its provisions was one giving Alexander the right to collect all moneys that might become due on said railroad contracts. The mortgage recited various debts owing by the Wendelkin Company to Alexander, which it was given to secure. Those debts amounted to more than $15,000. The instrument was duly acknowledged and was recorded in the office of the

recorder of deeds of Cape Girardeau county on March 26, 1902. M. S. Alexander swore it was also recorded in St. Louis. Whether this is true or not, the fact is that all the property in dispute between plaintiff and the interpleader was in Cape Girardeau county, except the debt due from Johnston Bros. The Wendelkin Company had bought some mules from John Scott & Co. and given the latter firm a mortgage on them for $3,000. The equity in these mules was supposed to be worth $3,000 and a bill of sale or mortgage was executed, transferring those mules to Alexander June 21, 1902. This incident is dwelt on in the briefs, but is not very relevant to the points made, because the mules were not attached, and, hence, are not in dispute between these parties. However, about a month before it was given, M. S. Alexander, brother of Charles H. Alexander the interpleader, came to Missouri as the latter's agent and plaintiff says, obtained for him after a fashion, possession of the mules and of certain machinery, implements and material belonging to the Wendelkin Company, but then in the use of John Scott & Co. at Forest Park in St. Louis. A few days afterwards the following bill of sale was executed by the Wendelkin Company to Charles H. Alexander:

"State of Missouri, City of St. Louis, ss.

"Know all men by these presents that we, the Wendelkin Construction Company, a private corporation duly incorporated under the laws of the State of Texas, with its principal office, at Dallas, Texas, for in consideration of the sum of $9,950 to us in hand paid, the receipt whereof is hereby acknowledged, have bargained, sold and conveyed, and do by these presents bargain, sell and convey unto C. H. Alexander, of Dallas, Texas, the following described personal property belonging to the said Wendelkin Construction Company, described as follows, to-wit: Twenty-eight head of live stock, consisting of horses and mules; fourteen set of harness;

eighteen wheeled scrapers; fifteen drag scrapers; four plows; two farm wagons; three tank wagons; one spring wagon; one buggy; four sets of cart harness; two steam drills and drill rods; two steam boilers, ten H. P.; two blacksmith outfits, consisting of vises, screw plates, drills, small tools, anvils, and tire shrinker, and all tools and apparatus connected with said blacksmith outfits; one corral tent, fifty feet by thirty feet; seven small tents; two pumps; fifty picks; fifty shovels; one hundred and fifty quilts; one hundred and fifty blankets; two pair scales; one cook stove, utensils' and cooking outfit; eighteen dump wagons; two graders; two traction engines; five bunk tents; and all tools, apparatus and appliances owned and used by said Wendelkin Construction Company and situated at or near its camp near Forest Park, in the city of St. Louis, Missouri, or at Neely's Landing, Missouri.

"To have and to hold the said property unto the said C. H. Alexander, his heirs and assigns forever, and possession of said property is hereby delivered to the said Alexander.

"WENDELKIN CONSTRUCTION CO.,
"By F. S. WENDELKIN, Pres."

Just when that document was executed is not definitely shown; but it was acknowledged on June 27, 1902, and recorded at Cape Girardeau county, June 30. It embraced the articles of personal property in dispute, all of which are said to have been at Neeley's Landing in Cape Girardeau county. It will be observed that it also embraced the other property located near Forest Park, St. Louis, which is not in dispute in this case. The testimony tends to show that prior to the execution of the bill of sale, M. S. Alexander had taken possession of all the property at Forest Park in behalf of his brother, and that simultaneously with its execution, but a day previous to the date of its acknowledgment, he went to Neeley's Landing and attempted to take possession of all

the property of the Wendelkin Company at that point. As we understand, he had charge in some way of the work Scott & Co. were doing at Forest Park, and in prosecuting that work he got in possession of the machinery and tools. The evidence for the plaintiff tends to show possession was taken under the bill of sale acknowledged June 27. All the property turned over by the Wendelkin Company to Charles H. Alexander was accepted at a valuation of $9,950, and that sum was credited on the indebtedness of the Wendelkin Company to him. It is contended by plaintiff that the evidence would support the inference that the entire property taken under the bill of sale was worth $45,000, and that the Wendelkin Company then owed, as C. H. Alexander knew, twenty-seven thousand dollars, or more, in St. Louis or to Missouri creditors; that the large value of the property in proportion to the price at which it was taken, and also the fact that Alexander knew of the Wendelkin Company's indebtedness to other creditors, tended to prove the conveyance to him was made to hinder and delay creditors of the Wendelkin Company and that he participated in the intention. After M. S. Alexander got possession of the personal property for Charles H. Alexander, W. D. Wylie & Co. bought a part of it from the latter, paying $3,500 for it. The property purchased included the articles in controversy between W. D. Wylie & Co. and the plaintiff. Plaintiff contends the evidence tended to establish that Wylie & Co. knew the property had been conveyed to Alexander in fraud of the creditors of the Wendelkin Company, and, hence, are not innocent purchasers. It is further contended by plaintiff that the bill of sale to Alexander was void because the Wendelkin Company had not complied with the statutes of this State, authorizing foreign corporations to do business in it and as Alexander acquired no title to the property transferred to him by the bill of sale, his assignees, W. D. Wylie & Co., acquired no title

to that portion of the property afterward sold to them. It should be stated that the meeting of the directors of the Wendelkin Company at which the bill of sale of June 27 was authorized, was held in Missouri and the instrument was executed in Missouri. There was testimony that it was taken in lieu of the Texas mortgage of March 20, 1902, because Alexander was dissatisfied with the security afforded by the latter instrument. There was also testimony that it was taken as additional security and much of the indebtedness the bill of sale secured was for money advanced by Charles H. Alexander in 1902; some of it as late as May 23, nearly two months after the second Texas mortgage was given.

The court declared that before the interpleaders could recover in their respective actions, it must appear they were the owners and entitled to the possession of the goods and chattels sued for, at the time of the levy of the attachment, and unless the court, sitting as a jury, believed from the evidence this was true, the verdict must be for plaintiff; that the expressions "doing business" or "engaged in business" in this State did not mean doing a single act, but carrying on, performing and transacting in this State, the usual and customary business of the corporation; that there was nothing in the sections of the Revised Statutes of Missouri invoked by plaintiff which made it unlawful for foreign corporations doing business in this State without complying with those sections, to convey and assign their property in payment and extinguishment of valid and pre-existing debts, and such a conveyance and the title of those claiming thereunder, were valid, notwithstanding the conveying corporation had not complied with said statutes. Declarations stating the converse of the latter proposition were requested by plaintiff and refused. The court refused to declare that the Handlan-Buck Company was not estopped to defend against the interpleaders by the fact that it had dealt with the Wendelkin Com-

pany as a corporation doing business in the State of Mïs-
souri, and had sold it goodŝ, unless the Handlan-Buck
Company knew at, or before, the time it sold the goods
and dealt with the Wendelkin Company, that the latter
was a foreign corporatiòn which had not complied with
the laws of the State. The court refused to declare the
law to be that a man is presumed to intend the natural
and necessary consequences of his acts, and that if the
court sitting as a jury found the object or effect of the
bill of sale from the Wendelkin Company to Alexander
was to hinder, delay and defraud creditors of the Wen-
delkin Company and Alexander participated in such ob-
ject and intent and thereby the creditors of the Wen-
delkin Company were hindered, delayed or defrauded,
then the instrument was void. Refused also to declare
that under the pleadings and the evidence the interplead-
ers could not recover and entered judgment in favor of
each of them; from which judgments plaintiff prose-
cuted appeals.

It was stipulated by the parties that one abstract of
the record might be prepared for use in all three of the
appeals and used with the same force and effect as if a
special abstract had been prepared in each.

GOODE, J. (after stating the facts.)—Plaintiff's
main proposition is that the bill of sale given by the Wen-
delkin Company to Charles H. Alexander is absolutely
void because said company, a foreign corporation, was
doing business in Missouri without having complied
with the statutes. This proposition was affirmed, so far
as any right of the defaulting corporation is concerned,
in the case of Tri-State Amusement Co. v. Forest Park
Highlands Amusement Company, decided by the Su-
preme Court, 192 Mo. 404. It was decided the
other way in Carson-Rand Co. v. Stern, 129 Mo. 381,
31 S. W. 772. In the opinion in the Tri-State case, it
is said the Carson-Rand case falls in the class of decis-

ions construing contracts of foreign corporations made, not in Missouri, but in the home State of the corporation and valid there. The opinion in the Carson-Rand case does not state that the contract was a foreign one and the reasoning of the court shows clearly that a domestic contract was in issue. Moreover, the agreed statement of facts on which the case was submitted contained, among other things, the agreement that plaintiff had for a long time conducted a lumber yard in St. Louis; that the notes in suit were made and executed in the city of St. Louis, were payable in St. Louis and that the sales of lumber for which the notes were given were made in St. Louis. The proposition relied on in that case, as shown by the briefs, was that this State does not recognize the rule of some other States, to-wit; that a foreign company refusing to comply with the laws of the State cannot make a valid contract therein. The opinion said:

"What was the paramount object of the enactment? Not to exclude such concerns from participation in the business done in Missouri; but to compel a compliance with certain conditions by them. Those conditions were imposed with a view probably, to place foreign and domestic companies on a footing of equality in the field of commerce.

"The object of the law was rather to induce observance of those conditions than to deprive any foreign corporation of a right of action, or other property."

The judgment was reversed and the cause remanded for further proceedings; an order as entirely incompatible with the theory that the notes were void, as was the reasoning of the opinion. However, it is the latest decision that controls, and under it a contract made by a foreign corporation in Missouri, when the corporation has not complied with the Missouri laws authorizing it to do business, must be treated as void in an action on it by the corporation, unless there are circum-

stances to bring it within some exception to the rule; for example, that the contract was made outside the State and was valid where made. In the present case no delinquent foreign corporation is seeking to enforce a contract made with it. The contract in issue is asserted, not by the corporation, but by the interpleader Alexander and a firm claiming under him, W. D. Wylie & Co. This contract had been entirely performed by the Wendelkin Company and Alexander before the litigation arose over it. It is not assailed as invalid by either party to it, but is attacked by a stranger as void in the hands of the obligee and his assignees, Wylie & Co. To concede this proposition would be to wipe out all rights, no matter how thoroughly vested, obtained under a contract, no matter how completely executed, made in Missouri with a foreign corporation doing business without authority of law. We do not see how on its theory, the position of the Handlan-Buck Company is any better than that of Alexander, except that the latter holds the affirmative of the issue. The debt for which the Handlan-Buck Company attached, grew out of a contract with the Wendelkin Company, and there is no more proof that Alexander knew the Wendelkin Company had not complied with the statutes when it executed the bill of sale, than there is that the Handlan-Buck Company knew the fact when it sold the goods for which it sues. In fact there is no evidence on the subject one way or the other. We think the most extreme construction of the statutes will not warrant us in annulling the bill of sale in the hands of innocent parties in possession of the property transferred by it, and that the declarations of law plaintiff asked respecting the inability of a foreign corporation to transact business in Missouri, prior to complying with our statutes, were irrelevant even though, abstractly considered, they may be correct. Whether the statutes were intended to invalidate contracts made by non-complying corporations, or merely

to suspend the remedy on those contracts the legislation was directed against the corporations, and not against third parties who might deal with them in ignorance of their disobedience. And the statutes are especially inapplicable when the contracts assailed are no longer executory, but fully executed. To this effect are the decisions on analogous contracts not possessing moral turpitude, but prohibited by a statute. [Mason v. Pitt, 21 Mo. 391; Rollins v. McIntire, 87 Mo. 495.] The most frenzied policy of strengthening the acts intended to compel certain steps to be taken by foreign companies before doing business in this State, can find no motive for holding contracts void, when to do so will neither punish a delinquent company nor influence foreign companies generally to comply with the law. It is not easy to discern how such a company will be affected financially by its assets being taken to pay one creditor rather than another; and aside from sentiment, it likely would be indifferent about the matter. To hold the title of the interpleader void will visit the entire penalties of the statute on innocent parties and yet the ruling will not operate even *in terrorem* on foreign companies. Such a construction of the law would leave the property, as among several persons claiming title under a company in default, not with him who got possession first and had, by all analogies, the better right, but with him, who in the course of litigation, happened to escape the burden of proof. In this case plaintiff took the property from the interpleader by process of attachment, and because the latter was compelled to sue to get it back, he must lose, though he has been put to trouble and cost in caring for the property. This result is both unreasonable and unrighteous. No case has been cited holding that a transfer of property by a delinquent foreign company to a third person ignorant of the company's default, vested no title in the transferee, but was so utterly void in the hands of the obligee, after possession taken

and complete execution of the agreement, that another person could wrest the property from the transferee to satisfy a claim arising out of a contract with the same delinquent corporation. This point was considered and decided in Mason v. Pitt, 21 Mo. 391, wherein Downing v. Ringer, 7 Mo. 585, the original case on the subject, was ruled to compel no such result. The point was determined again the same way in Rollins v. McIntire, 82 Mo. 496, 505, a decision that went further than Mason v. Pitt, and to the extent of holding that, although the person under whom Rollins claimed, had entered on the premises in controversy, under an executory agreement of sale made in violation of a statute requiring the plat of an addition to be recorded before lots were sold, Rollins acquired an equity for the title against one taking the legal title later, but pursuant to the same executory agreement and with notice of Rollins' title (loc. cit. 507). That Downing v. Ringer does not forfeit the title to property held by an innocent transferee because he got it under a prohibited and unenforcible contract, is declared in Mason v. Pitt, in this passage:

"The case of Downing v. Ringer (7 Mo. 585), decides that the proprietor of a town, the plat of which is unrecorded, cannot recover the purchase money for a lot sold in such town, inasmuch as the penalty imposed on the vendor for such an act implies a prohibition, and the courts cannot aid him in doing that which is forbidden by law.

"If the vendee of a lot, in such a town, knowing that the plat was unrecorded when he purchased, should bring an action to enforce a specific performance of the contract of sale, he might be met with the statute. But, in this case, there is nothing showing that the vendee was affected with any notice of the fact that the plat was unrecorded.

"*But the answer to this whole matter of the plat being unrecorded is, that the contract is executed, the*

*title has passed, and the law imposes no penalty on the vendee."* (We italicize.)

Courts and commentators have descanted on the injustice of holding contracts void even in the hands of the delinquent company, and the mischief would be intolerable if innocent parties were held to occupy no better position. [6 Thompson, Corporations, sec. 7955.]

It is strenuously insisted by plaintiff that when the property in controversy was attached, the interpleader did not have possession of it under the bill of sale executed June 27, 1902, but held possession under the chattel mortgage executed in Texas, March 20, 1902, and afterwards recorded in Cape Girardeau county. It would appear from the petition, though there is no evidence on the subject, that some of the merchandise for which plaintiff attached, was sold prior to the recording of that instrument. The petition alleges that the plaintiff's indebtedness accrued from sales which reached from January to June, 1902. Plaintiff's position is that as the interpleader had possession of the property under the chattel mortgage, said mortgage could not take effect against its demand, because of the clause of section 1024 of the Revised Statutes of 1899, which provides that "no corporation incorporated under the laws of any other State, territory or country, doing business in this State, shall be permitted to mortgage, pledge or otherwise incumber its real or personal property situated in this State, to the injury or exclusion of any citizen or corporation of this State which is a creditor of such foreign corporation; and no mortgage by any foreign corporation, except railroad and telegraph companies, given to secure any debt created in any other State, shall take effect as against any citizen or corporation of this State until all its liabilities due to any person or corporation in this State at the time of the recording of such mortgage, have been paid and extinguished." If we grant, for the moment, that the evidence conclusively showed

the interpleader was in possession of the disputed property under the Texas mortgage, instead of the bill of sale, still the judgment in his favor could not be reversed for that reason, in the absence of proof that when said mortgage was recorded the Wendelkin Company owed plaintiff a debt. The presumption obtains that the ruling of the trial court was right, there being no affirmative showing to the contrary. No declaration of law was asked on hypothesized facts, regarding the right of plaintiff to collect its demand out of the attached property as against the interpleader's lien or title, if it was claiming under the Texas mortgage. Plaintiff's contention simply is that the undisputed evidence shows the interpleader was in possession under that instrument and, therefore, could not maintain its interplea. But it is obvious that this would depend on whether or not plaintiff's indebtedness was in existence when the instrument was recorded, as to which there is no proof. Neither is the evidence conclusive that possession was taken under the Texas mortgage. Moses Alexander swore the bill of sale was given in lieu of the Texas mortgage and that he took possession of the property at Neely's Landing under the bill of sale. It is true he had had a sort of manual possession or custody of the property in St. Louis prior to the execution of the bill of sale, but this he said, was as agent of Scott & Company. There is some confusion in the testimony of Moses Alexander regarding when and under what instrument he took possession of the property in dispute; but the evidence is certainly not conclusive that it was under the Texas mortgage instead of the bill of sale.

Plaintiff contends that the undisputed evidence shows there was fraud in fact in the transfer of the property in dispute to the interpleader and that the transaction was tainted with fraud as against the creditors of the Wendelkin Company. We do not accept this proposition. There is little evidence tending to prove

fraud. The property was taken by Alexander at a valuation of $9,950, and if there were facts to support an inference that it was worth more, there was positive testimony that its value was not in excess of the price at which the interpleader took it. The indebtedness of the Wendelkin Company to the interpleader was, as stated, some $22,000, or thereabouts.

Conceding there was an issue of fraud to be decided by the trier of the fact, regarding the bona fides of the preference of the interpleader by the Wendelkin Company, the question arises whether the court's rulings on the declarations of law requested on said issue were proper. Plaintiff insists the court refused to pass on it as an issue of fact and disposed of it, instead, as an issue of law. This contention is based on the refusal of three declarations requested by plaintiff which, in substance, declared that if the court sitting as a jury, believed from the evidence the object or effect of the bill of sale from the Wendelkin Company to the interpleader was to hinder, delay and defraud the creditors of the Wendelkin Company and interpleader participated in the intent and thereby the creditors were hindered, delayed and defrauded, then the bill of sale was void and the interpleader could not recover. We do not think the conclusion that the court refused to try the issue of fraud, follows from the refusal of the declarations requested, if attention is paid to the way in which they were drawn. They propounded the proposition that if the object or effect of the transfer was to hinder, delay or defraud the creditors of the Wendelkin Company, and Alexander participated in the purpose, and creditors were thereby hindered and defrauded, the instrument was invalid as to creditors. A debtor in failing circumstances in this State has the right, except as prevented by the bankrupt law, to prefer one creditor to another. In exercising the right he may transfer all his property to

124 App—24

the one preferred if this is done with an honest purpose to give a preference and not with the intention of obstructing other creditors in the collection of their debts or defrauding them. If, however, the preference is colorable and mixed with it is the intent to hinder, delay or defraud creditors not preferred, the contract of preference is invalid as against such creditors, if the preferred one knew of and shared in the fraudulent purpose of the debtor. But there must be an intention hostile to the rights of non-preferred creditors. The mere fact that the effect of the transfer is to hinder and delay them in the collection of their debts, will not, of itself, make the preference invalid. [Dougherty v. Cooper, 77 Mo. 528; Holmes v. Braidwood, 82 Mo. 610; Crothers v. Busch, 153 Mo. 606, 55 S. W. 149; Reedy & Gaft v. Stern, 12 Mo. App. 115; Kendall v. Shoe Co., 46 Mo. App. 580; Frank v. Curtis & Son, 58 Mo. App. 349; Scott Hardware Co. v. Riddle, 84 Mo. App. 275.] Now the declarations as asked, would have made the preference of Alexander void as against plaintiff if the object or effect was to hinder, delay or defraud plaintiff. No doubt it would have been void if that had been the intention and purpose with which it was made and Alexander had shared in the purpose. But as the declarations were drawn in the disjunctive and made, not only the object, but the effect of the preference, fatal to its validity, the law was erroneously stated. Hence it cannot be concluded that the requested declarations were refused because the court thought there was no evidence tending to prove fraud. We may say in passing that if any such evidence was given, it was slight. The argument that there was such evidence is based largely on the supposed great value of the property transferred in comparison with the indebtedness owed by the Wendelkin Company to Alexander. But the only two witnesses who testified regarding the value of the property swore it was reasonably worth about what Alexander allowed for it. In

truth no one reading the record can doubt that plain-
did not rely on this issue at all. It introduced no evi-
dence, nor offered any, to show actual fraud. What
little evidence regarding the value of the property con-
veyed, is contained in the record, was elicited by counsel
for the interpleader. for the purpose, we suppose, of
showing a fair consideration was given. However, in
view of the form of the declarations of law asked on the
point, we cannot say the trial judge treated the question
of actual fraud as one which must be found in favor
of the interpleader as a matter of law. The proper con-
clusion to be drawn is, that he weighed whatever evi-
dence was introduced, touching the question of fraud,
and refused the requests because they stated the law
inaccurately.

The judgment is affirmed. All concur.