JERROLD–STEPHENS CO., Inc.,
Plaintiff,

v.

GUSTAVESON, Inc., et al., Defendants.

No. 10025.

United States District Court
W. D. Missouri, W. D.

Feb. 15, 1956.

Margolin & Kirwan, Kansas City, Mo., for plaintiff.

Terence M. O'Brien, Kansas City, Mo., and Joseph A. Hoskins, of Morelock, Hoskins & King, Kansas City, Mo., for defendants.

WHITTAKER, District Judge.

This matter is now before me upon the several motions of defendants for a summary judgment, asserting that the pleadings and admissions on file show, as a matter of law, both, that plaintiff has no right to maintain this suit and that it has no cause of action against the defendants or any of them.

This is an action in equity, claiming that plaintiff, a Minnesota corporation, while carrying on a metal furniture manufacturing business in Missouri, there employed, on January 19, 1955 (the date it was incorporated in Minnesota), the defendant, Walters, to set up its production procedures and to supervise and manage the acquisition of materials for, and the manufacture, packaging and shipping of, its established metal furniture products, and to assist in designing and developing new metal furniture products to be manufactured by plaintiff; that pursuant to this arrangement, defendant, Walters, then entered plaintiff's employ in Missouri, in the capacity and for the purposes stated, and so continued until July 25, 1955, during which time he was a trusted employee of plaintiff and became thoroughly acquainted with its "trade secrets" in respect to the acquisition of materials for, and the design, manufacture, packaging, advertising and sale of, its metal furniture products and with its customer lists; that on July 25, 1955, plaintiff learned that in April, 1955, defendant, Walters, and the other individual defendants—being officers and employees of defendant, Gustaveson, Inc.—acting for themselves and for Gustaveson, Inc. (which had theretofore been engaged in the business of manufacturing electrical switchboards and kindred items, and selling them to utilities), conspired to enter the metal furniture business as a rival of plaintiff and to appropriate and use in their competing business plaintiff's "trade secrets" and customer lists; that, in furtherance of the conspiracy, the individual defendants (other than Walters), acting for themselves and for defendant, Gustaveson, Inc., induced Walters to disclose to them plaintiff's "trade secrets" pertaining to its metal furniture business, and its customer lists, and said defendants, whom Walters then joined, made, and continue to make, use of plaintiff's "trade secrets" and customer lists in manufacturing and selling to the public, including plaintiff's customers, metal furniture embodying plaintiff's "trade secrets" to their profit and to plaintiff's damage, and that Walters, though actually working with the other defendants from April, 1955, in their use of plaintiff's "trade secrets" and customer lists in their competing business—all without the knowledge of plaintiff—remained in plaintiff's employ until July 25, 1955; that as a result of defendants' use of plaintiff's "trade secrets" and customer lists plaintiff has lost large amounts of business and profits, and its market has become demoralized, and it has been irreparably injured.

Plaintiff prays for an injunction against further utilization by defendants of its "trade secrets" and customer lists, and for an accounting of profits and for damages for use thereof, and for a further judgment against Walters for the salary he received from plaintiff from April 1, to July 25, 1955.

Depositions, answers to interrogatories, and other admissions on file, show that at the time of, and as a condition of, his employment by plaintiff, Walters agreed not to disclose plaintiff's "trade secrets" to others, and that, though plaintiff was doing business in Missouri from the time it was incorporated in Minnesota on January 19, 1955, and at the time of the making of the employment contract with Walters in Missouri on the same date, plaintiff did not become licensed or qualified to do business in Missouri as a foreign corporation un-

til August 4, 1955. It is upon these bases that defendants claim to be entitled to a summary judgment in their favor.

They say, first, that this action is founded upon the contract of employment which plaintiff made with Walters in Missouri on January 19, 1955, when it was doing business in Missouri without a license, and that the making of this contract, itself, constituted "doing business" in Missouri, and that, therefore, the Courts of Missouri, including Federal courts sitting in Missouri (because of the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188), are closed to the plaintiff in an action upon that contract, under the provisions of Section 351.635, RSMo 1949, V.A.M.S., and, hence, this court may not entertain this action; and, second, even if that be wrong and this court may entertain this action, yet, the employment contract is "void", for the reasons stated, under the statutes and decisions of Missouri, and that the subsequent licensing of plaintiff to do business in Missouri did not "validate" the "void" contract, and, therefore, plaintiff cannot recover in this action founded thereon; and, third, that plaintiff could protect its business ideas and "trade secrets" only by a *valid* contract against disclosure, and that inasmuch as the employment contract with Walters was "void", for the reason stated, plaintiff's "trade secrets" were, thus, surrendered to the public domain and may be used by defendants without liability to plaintiff.

As to plaintiff's first claim, it is true that under a former section of the Missouri statute, enacted many years ago and last contained in the 1939 revision as Section 5077, the Missouri courts had held that a contract, made in Missouri by an unlicensed foreign business corporation doing business in Missouri and which contract was an integral part of its "unlawful business" in Missouri, was void, and any action thereon was barred from a forum in its courts[1]. But in 1943 Missouri adopted a new corporation code (said to have been largely taken from, but not to be identical with, the 1933 Corporation Code of Illinois, S.H.A. ch. 32, § 157.1 et seq.) which is now Chapter 351, RSMo 1949, V.A.M.S. Section 351.635 of that Code covers the same subject matter as old Section 5077, R.S.Mo.1939. Both say, in effect, that a foreign corporation, doing business in Missouri without a license, shall be subject to a fine. Then old Section 5077 said "in addition to which penalty, on and after the going into effect of said sections (Sections 5072 to 5078, R.S.Mo. 1939) no foreign corporation, as above defined, which shall fail to comply with said sections, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of the contract or tort." Whereas, new Section 351.635, RSMo 1949, V.A.M.S., says "in addition to which penalty, no foreign corporation, failing to comply with this chapter, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of the contract or tort, *while the requirements of this chapter have not been complied with.*" (Emphasis supplied.)

From this it will be seen that, upon the point here considered, old Section 5077 and new Section 351.635 are practically identical down to the words, contained in the new, but not in the old, section, reading: "while the requirements of this chapter have not been complied with." Thus, it is obvious, that the new act made a change in the statute, and the question is: What was its purpose and legal effect?

1. Tri-State Amusement Co. v. Forest Park Highlands Amusement Co., 192 Mo. 404, 90 S.W. 1020, 4 L.R.A.N.S., 688; Amalgamated Zinc & Lead Co. v. Bay State Zinc Mining Co., 221 Mo. 7, 120 S.W. 31, 23 L.R.A.,N.S., 492; Flinn v. Gillen, 320 Mo. 1047, 1054, 10 S.W.2d 923, 926; State ex rel. American Surety Co. of New York v. Haid, 325 Mo. 949, 955, 30 S.W.2d 100, 102.

Defendants, as a part of their argument—that this is an action on a contract made by an unlicensed foreign corporation as an integral part of its unlawful business" in Missouri, and that, therefore, the Missouri courts are closed to plaintiff in this action—urge a construction that would, in effect, require addition, at the head of the new clause added in Section 351.635, of the words "founded upon a contract made or a tort committed" so that the analysed portion of the questioned section would say " * * * no foreign corporation, failing to comply with this chapter, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of the contract or tort, *founded upon a contract made or a tort committed* while the requirements of this chapter have not been complied with." That, of course, cannot be done. The premise of the questioned language is, and its key words are, that "no foreign corporation, failing to comply with this chapter, *can maintain any suit * * * in any of the courts of this state * * * while the requirements of this chapter have not been complied with."* These are plain and simple words that neither call for nor admit of construction. They mean—for they say—that no foreign corporation having failed to comply with this chapter "can maintain any suit * * * in any of the courts of this state * * * while the requirements of this chapter have not been complied with." The converse follows as day the night. The converse is: If, after "failing to comply with this chapter * * * the requirements of this chapter have * * * been complied with", then the foreign corporation "can maintain *any suit * * * in any of the courts of this state."*

As to defendants' second, and closely related, point—that the employment contract is "void" because made in Missouri by an unlicensed foreign corporation as an integral part of its "doing business" in Missouri, and that subsequent licensing of plaintiff did not "validate" the "void" contract—, I quite agree that if the contract was "void", subsequent licensing did not "validate" it, for a void act is no act, and cannot be "validated". The question is whether, under new Section 351.635, the contract was "void", or, was merely "unenforceable" in Missouri courts until the foreign corporation complies with the domestication laws of Missouri. That question is not necessarily ruled by the premise and principles of Missouri cases construing old Section 5077, for it has been repealed. Rather, the question is now governed by new Section 351.635, which, though much like old Section 5077 down to the last clause, is very different in legal effect because of the added new words reading: "while the requirements of this chapter have not been complied with."

The briefs have not, nor has my own research, disclosed any Missouri decision upon the point, though there is one by the Federal District Court for the Eastern District of Illinois that treats with the question to some extent, Hunter Packing Co. v. Trinity Universal Ins. Co., 1948, 98 F.Supp. 215—holding, in effect, that the amendment probably was not intended to make any change in the Missouri law in this respect, but which was questioned by Mr. Carson Cowherd (who was chairman of the committee which drafted and proposed the Missouri code to its Legislature) in his commentaries on the code, 17 V.A.M.S. pp. 299, 318, 319, saying that "the rule as thus stated (in that case) would seem to give a rather restrictive meaning to the words contained in this phrase" (meaning the phrase reading: "While the requirements of this chapter have not been complied with"). But inasmuch as resolution of the question is not necessary to a decision of this case, and, therefore, anything I might say thereon would really be obiter, and inasmuch as, I believe, it would be far more seemly that this question be determined by the Supreme Court of Missouri than by a Federal District Court, I purposely do not go out of my way to reach it, but leave it entirely open.

Even if the employment contract here constituted "doing business" in Missouri (which is doubtful in itself, Hogan v. St. Louis, 176 Mo. 149, 75 S.W. 604) and is also "void", still this action, though stemming from a relationship created by that contract, is not, in any real sense, one upon, or to enforce, that contract. Nor does it depend for its success upon giving effect to that contract. Rather, it is an action in equity to enjoin defendants from further use, and for damages for their past and continuing use, of plaintiff's property rights—its "trade secrets", which were learned by Walters, under the confidential relationship of employer and employee, and communicated to his co-defendants.

■■■ The Missouri courts have always and uniformly protected the property rights of such corporations, even though growing out of contracts held "void" because the corporation was unlicensed in Missouri when they were made, whenever it could do so without giving effect to the void contract itself.[2] That plaintiff had a legally recognized and protectable property right in these "trade secrets" under the law of Missouri and, generally, is not deniable[3], and, therefore, it makes no difference to this case whether the employment contract be held void or not, for this is not an action on, or to enforce, the contract.

Defendants' third point is that, though plaintiff had a property right in these "trade secrets", it could not disclose them to its employee, Walters, without thereby putting them into the public domain for free use by all, except under a *valid* contract of secrecy.

■■■ Is this legally correct? Does protection of an employer's "trade secrets" against adverse and competitive use by an employee or former employee depend upon a valid and enforceable express covenant of secrecy? I find that the authorities say it does not. They say that if a secret is learned in confidence, or in a confidential relationship, it "will be protected as against those who, through breach of trust or violated confidence, attempt to apply the secret to their own use or to impart it to others", Germo Mfg. Co. v. Combs, 209 Mo. App. 651, 240 S.W. 872, 881, or, otherwise stated, it "will nevertheless be protected from use or disclosure by one to whom it has been revealed in confidence." Sandlin v. Johnson, 8 Cir., 141 F.2d 660, 661. This is a rule of public policy, and is "founded in a profound knowledge of the human intellect and of the motives that inspire the actions of men", and "the law peremptorily forbids everyone who, in a fiduciary relation, has acquired information concerning, or interest in the business or property of his correlate from using that knowledge or interest to prevent the latter from accomplishing the purpose of the relation." Trice v. Comstock, 8 Cir., 121 F. 620, 622-623, 61 L.R.A. 176. See also Du Pont de Nemours Powder Co. v. Masland, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016, and 2 Am.Jur., Agency, Section 271. A good statement of the rule is found in 1 Nims, Unfair Competition, Section 154, p. 431, as follows: "To extract information from an

2. United Shoe Machinery Co. v. Ramlose, 231 Mo. 508, 132 S.W. 1133; British-American Portland Cement Co. v. Citizens' Gas Co., 255 Mo. 1, 164 S.W. 468; Handlin-Buck Mfg. Co. v. Wendelkin Const. Co., 124 Mo.App. 349, 101 S.W. 702; Broadway Bond St. Co. v. Fidelity Printing Co., 182 Mo.App. 309, 170 S.W. 394; Good Roads Machinery Co. v. Broadway Bank, Mo.App., 267 S.W. 40; Farrand Co. v. Walker, 169 Mo.App. 602, 155 S.W. 68; Johnson v. City of St. Louis, 8 Cir., 172 F. 31; General Film Co. of Missouri v. General Film Co. of Maine, 8 Cir., 237 F. 64.

3. Germo Mfg. Co. v. Combs, 209 Mo.App. 651, 240 S.W. 872; Sandlin v. Johnson, 8 Cir., 141 F.2d 660, 661; Trice v. Comstock, 8 Cir., 121 F. 620, 622, 623, 61 L.R.A. 176; Du Pont de Nemours Powder Co. v. Masland, 244 U.S. 100, 37 S. Ct. 575, 61 L.Ed. 1016; 2 Am.Jur., Agency, Section 271; 5 Williston, Contracts, Section 1646, p. 4623; 1 Nims, Unfair Competition, Section 154.

**16**

employee with respect to the trade secrets of his former employer is unfair competition. If an employee or agent leaves his employer or is discharged knowing such information, and he imparts it to a rival to the damage of his former employer, the second employer will be enjoined from using the information, and may be compelled to account for any profits made from use of this information."

This is the legal basis upon which protection rests in an employer-employee situation such as we have here. Thus, it does not rest upon a valid and enforceable express covenant of secrecy, and it follows that the defendants have no right to use plaintiff's "trade secrets", learned by Walters while employed by plaintiff, whether Walters' employment contract was valid and legally enforceable or not.

For these reasons the several motions of defendants for a summary judgment in their favor must be, and they are hereby, each denied.