THE HENRY BILL PUBLISHING COMPANY v. CLINTON C. DURGIN.

*Conversion—Sale—Agency.*

1. Where a person becomes sole agent for the sale of specific articles which he only obtains by purchase, the agency begins and ends with the exclusive privilege of handling the goods in the allotted territory.

2. Plaintiff is a book publishing company, and sues in trover for the conversion of copies of a certain book which defendant had engaged to canvass for and sell in certain designated territory, and of certain moneys received on such sales. The contract between the parties consisted of certificates of agency and of agreement signed by the respective parties. The certificate of agency stated that the defendant was appointed general agent for the sale of the book in certain territory; that he was required to sell it at the regular printed prices, except as stated in the certificate; that he was to be allowed a discount of 50 per cent. from the printed subscription prices as his commission for soliciting and delivering; that all books undelivered might be returned within three months from time of shipment, if in good condition, at the prices charged, and the same would be credited to the defendant; that the defendant would not be permitted to dispose of his agency, or the territory allotted him, without written permission from the plaintiff. In a postscript attention was called to the number of agents canvassing for the book, and the impossibility of ascertaining in regard to the responsibility of names offered as security, and it was suggested that the defendant remit funds with orders, or that he could have the books forwarded by express, C. O. D. In the certificate of agreement the defendant obligated himself, in consideration of his appointment as general agent, to canvass the territory allotted him, and none other, to devote his entire time to such canvass, and to report from week to week his success. Before shipping the books on defendant's order a guaranty of payment was required, which defendant gave, and the books were thereupon shipped, and in default of payment this action was brought as before stated. And it is held that the title to the books passed to the defendant, and that he cannot properly

be held for unlawful conversion of the same, or of the money for which he may have sold them.

Error to Kent. (Grove, J.) Submitted on briefs June 20, 1894. Decided July 10, 1894.

Trover. Defendant brings error. Reversed, and no new trial granted. The facts are stated in the opinion.

*Taggart, Knappen & Denison,* for appellant, contended for the doctrine of the opinion.

*Earle & Hyde,* for plaintiff, contended:

1. That the relation between a commission agent for the sale of goods and his principal is fiduciary, and the proceeds of sales belong to the principal; citing *Baker v. Bank,* 100 N. Y. 31.

2. Where an agent for the sale of goods guaranteed the collection for all goods sold on credit, and received a larger commission on account of this guaranty, the title to the proceeds of sales received by the assignee for the benefit of creditors of the agent was held to have remained in the principal; citing *Converseville Co. v. Woolen Co.,* 14 Hun, 609; *Burton v. Goodspeed,* 69 Ill. 237; and where a manufacturer agreed to give an agent the exclusive sale of all its products for a certain territory, and the agent guaranteed all accounts, and was to pay for all goods not sold in a certain time, it was held that the title to the goods unsold did not pass to the agent; citing *Plow Co. v. Porter,* 82 Mo. 23.

3. In the case of goods consigned to be sold for the consignor, who is to regulate the price and terms of sale, the consignee is an agent, and the contract is one of bailment; and this is so though the consignment is made on a *del credere* commission. If, however, the consignee or factor is to sell upon terms fixed by himself, and is bound to pay to the consignor a fixed price, the contract is one of sale; citing 21 Amer. & Eng. Enc. Law, 520; *Walker v. Butterick,* 105 Mass. 237; *Audenried v. Betteley,* 8 Allen, 302; *Morss v. Stone,* 5 Barb. 516; *Rosencranz & Weber Co. v. Hanchett,* 30 Ill. App. 283; *Railroad Co. v. Mower Co.,* 76 Me. 251.

4. A vendee agreed that if he kept the property he would pay a certain price therefor. He died before payment, and his widow sold the property. And it is held that such sale was a conversion; citing *Jillson v. Wilbur,* 41 N. H. 106.

5. A purchaser of a quantity of gin agreed to give his note therefor, with a good indorser. He took the gin away without objection on the part of the vendor, and sold it. He never procured the indorser. And it was held that title did not pass, and he was liable for conversion; citing *Whitwell v. Vincent*, 4 Pick. 449.

6. Where goods are consigned to a factor to be sold, any portion remaining unsold to be returned to the consignor, the transaction is a bailment; citing *Blood v. Palmer*, 11 Me. 414; *Bank v. Schween*, 127 Ill. 573; *Middleton v. Stone*, 111 Penn. St. 589; *Eldridge v. Benson*, 7 Cush. 483.

HOOKER, J.   The defendant appeals from a judgment in trover upon a verdict directed by the court.   The action was commenced by declaration filed February 2, 1892, and charges the conversion "heretofore, to wit, January 1, 1886," of "a certain large number of books, to wit, of 500 copies of a book entitled 'Twenty Years in Congress,' of the value of $1,000; and a certain large amount of lawful money of the United States, to wit, of the sum of $1,000, of the value of $1,000; and a certain large number of bank bills, gold certificates, silver certificates, greenbacks, and gold and silver coin, to wit, of the value of $1,000." The plea was the general issue.

The plaintiff is a foreign corporation, engaged in publishing books, among which is the book named, and the defendant engaged in the sale of said book under a contract with plaintiff.   The contract was the result of correspondence, and consisted of a certificate of agreement, signed by the defendant, and a certificate of agency, signed by the plaintiff.   They are as follows:

### " CERTIFICATE OF AGENCY.

"This certifies that Clinton C. Durgin, of Hillsdale, Hillsdale Co., State of Michigan, is duly appointed general agent on commission for the sale of 'Twenty Years in Congress' in the townships of all Kent county, State of Michigan, and other townships, from time to time, as he may need them in thorough canvass, provided his success is mutually satisfactory, under the following rules and conditions:

"1. No other agent will have the right to occupy the above-named territory, nor will the said Durgin be permitted to canvass upon any other territory knowingly until it is duly allotted him, under penalty of forfeiture of list.

"2. The agent is required to sell books at the regular printed prices, except to those who will render sufficient assistance to warrant a discount, such as clergymen, editors, those who take more than one copy, etc., and to sell no books except by subscription.

"3. The agent is cautioned against setting any definite time for the delivery of books, and to have every subscriber write his or her name as much as possible. (See book of 'Private Instructions.')

"4. The agent will be allowed a discount of fifty (50) per cent. from the printed subscription prices (see prospectus sheet and subscribers' cards) as his commission for soliciting and delivering, i. e., for the muslin binding he will receive $3.75; for the sheep, $4.75; for the seal Russia, $5.50; and for the half morocco, $6.25; and a discount of 40 per cent. on the edition de luxe, $8.00.

"5. All books undelivered may be returned within three (3) months from the time of shipment (if in good condition) at the prices charged, and the same will be credited to the agent, provided he puts .his name on the box, so we may know from whom it comes.

"6. The agent is desired to recommend to us gentlemen and ladies to become agents (giving name and P. O. address), and, if such parties engage with us, we will give him $10 as a premium for each person 'so recommended when he has delivered 100 books. No premium allowed unless the party was recommended previous to his engaging with us.

"7. The agent will not be permitted to dispose of his agency, or the territory allotted him, without written permission from us.

"8. This certificate takes effect when the agent returns to us the 'certificate of agreement,' properly signed, and bearing even date with this; otherwise it is null and void.

"Dated at Norwich, Conn., this 20th day of July, A. D. 1883.

"THE HENRY BILL PUBLISHING COMPANY,

"CHAS. C. HASKELL, President.

"N. B. Having about 1,000 agents now in the field, in different parts of the country, it will be impossible for the publishers, in the press of business, to ascertain in

regard to the responsibility of names offered as security by many, and especially those at a distance.   They therefore suggest, as the better way for the agent, so that his order may be promptly filled, to remit funds with the order, as per our printed instructions, in which case the books will go by freight line instead of express, making a saving of expense; or he can have them forwarded per express, with bill for collection on delivery (C. O. D.), and, if unable to take and pay for all at once, can doubtless arrange with the express agent at the point of delivery to take a part at a time.   Cash orders will be filled in advance of all others.   The agent will be required to pay particular attention to our book of Private Instructions, furnished to each agent, and, as far as possible, observe all its requirements."

### "CERTIFICATE OF AGREEMENT.

"In consideration of having received the general agency for the work entitled 'Twenty Years in Congress,' in the townships of Kent county, State of Michigan, I do hereby agree:

"1. To thoroughly prepare myself on the book, according to the publisher's printed instructions, before entering the field to canvass.

"2. To enter no territory to canvass until it has been duly allotted me.

"3. To canvass thoroughly each township by school-districts, and to continue the canvass until I have finished all territory entered upon.

"4. To devote my exclusive time to canvassing for the books of the Henry Bill Publishing Company while in their employ.

"5. To report my success by card and letter each week, giving the number of subscribers for the week, also the whole number to date, and to report none but *bona fide* subscribers.

"6. To prosecute the canvass, and to follow the publisher's printed instructions, to the best of my ability.

"7. To commence canvassing within ten (10) days from the date hereof.

"Dated this 24th day of July, A. D. 1883.

[Signed]   "CLINT. C. DURGIN, Agent.   [L. S.]

"Grand Rapids P. O., Kent Co., State of Michigan.

"Hillsdale ———, Hillsdale, Michigan."

Under this arrangement the defendant took orders and

made delivery of the first volume of said book, and the second volumes were shipped from Norwich, Conn., upon June 8, 1886. Before shipment, plaintiff required a guaranty of payment, which defendant gave, his father becoming surety therefor. The correspondence in relation thereto was as follows, so far as it appears:

"Office of Henry Bill Publishing Company.
"Norwich, Conn., Jan. 30, 1886.
*"Dear Sir:* Your favor of the 26th inst. received. The second volume is practically complete, and we expect to be able to ship books within 10 or 12 days, but, of course, they cannot get to you in time for you to deliver and receive your money and pay up your note. The note is payable at Grand Rapids, and if you can arrange to take care of it there it would be all right; otherwise it would have to be renewed for a short time. It will be necessary for you to give us security on the 2nd volume, and to cover the note also, before we can ship the 2nd volume.
"Yours truly,
"Chas. C. Haskell, Pres't.
"C. C. Durgin, Esq.,
"Grand Rapids, Mich. O. B."

"New Market, N. H.—Rochester, N. Y.,
"Feb. 20, 1886.
"Chas. C. Haskell, Esq.,
"Norwich, Ct.
*"Dear Sir:* My son, Clinton C. Durgin, of Grand Rapids, writes me that the second vol. of Blaine's book, 'Twenty Years in Congress,' is ready for delivery, but that they will not be furnished unless the pay is guaranteed. You sent the first vol., I think, on my guaranty, and I hereby guarantee the pay for the second. This has been delayed by my absence from home. Hoping that this may be satisfactory, I am,
"Yours truly,
"D. W. C. Durgin,
"Ex-Pres. Hillsdale College, Hillsdale, Mich.
"New Market, N. H."

The books were thereupon shipped (June 8, 1886) to the defendant. Repeated requests for payment having proved unavailing, this action was brought. The plaintiff claimed

a balance of $17.73 upon the sales of volume 1, and $601.65 on sales of volume 2. The judgment was for $882.45, being the full amount claimed, $619.38, with interest.

The contract is peculiar. It consists of a certificate of agency, the receiving of which is made the consideration for defendant's promise to canvass. This certificate of agency prescribes the rules and conditions upon which the defendant was permitted to sell plaintiff's book. It nowhere expressly obligates the plaintiff to furnish him any books, or to pay him any compensation. It says that he " will be allowed a discount of 50 per cent. from the printed prices;" not that he will be paid, or may deduct from moneys received for plaintiff, 50 per cent. This is as consistent with the theory that he was to purchase the books at such discount as that they were to continue the property of the plaintiff. The next paragraph is consistent only with the former theory. We must conclude that it subserves some useful purpose. If so, what is it? It permits defendant to return the books upon certain conditions. If he were not a purchaser, he would have the right without this provision, which would be unnecessary; but, upon the theory of purchase, it secured him the valuable right of return if he could not deliver the books. This theory is also supported by the significant postscript to the certificate of agency, which must be treated as part of the contract. This shows that the goods were to be paid for upon delivery, either by cash in advance or by payment to the express agent before delivery. It cannot be supposed that the title was expected to remain in plaintiff after payment. It may be said that these books were furnished without such payment; but, while this is true, the defendant was required to secure the payment before plaintiff would ship the goods. Upon the evidence contained in this record we think that title to the books passed to the defendant, and that he could not properly

be held for unlawful conversion of the same, or of the money for which he may have sold them. It is no uncommon thing for persons to become sole agents for the sale of specific articles which they only obtain by purchase, which arrangement may be of advantage to both the vendor and so-called "agent." The agency begins and ends with the exclusive privilege of handling certain goods in given territory. This is apparently one of those cases.

We think it unnecessary to discuss the other questions raised. The jury should have been directed to render a verdict for the defendant.

Judgment reversed, and no new trial will be ordered.

McGRATH, C. J., LONG and GRANT, JJ., concurred. MONTGOMERY, J., did not sit.