JAMES A. WATKINS et al., Respondents, v. JOHN W. DONNELL et al., Defendants; R. L. ZEIGLER, Claimant, Appellant.

**St. Louis Court of Appeals, November 2, 1915.**

1. PRINCIPAL AND AGENT: Construction of Contract: Contract of Agency or Sale. A manufacturing corporation entered into a contract with Z, whereby it "engaged" him for a definite period of time "in the capacity of sales agent" to conduct "a sales agency" in a certain city, and agreed to pay him a stipulated monthly salary and, in addition, five per cent. commission on all sales, and further agreed to open and fit up an office for the carrying on of such business, at its own expense. The contract provided that the corporation should "sell and deliver" to Z goods of its manufacture at forty per cent. discount from retail prices, and that, upon the expiration of the term of the contract, it would "repurchase" from him the goods remaining on hand, if in fairly good condition, and contained a recital that Z had paid the corporation a certain amount "in payment of stock of goods to be furnished as herein provided." The contract further required Z to devote his entire time to the business and to deal honorably, not only with the corporation, but with the "public and all persons with whom he may have business relations," and required him to

sell the goods for cash, or "on thirty days' time, if secured by the endorsement of some financially responsible party, or on satisfactory letters of credit." It further required him to sell the goods at certain prices and to use care in ascertaining the standing of people to whom goods were sold on credit, and to furnish the corporation with daily, weekly and monthly reports, giving a full and accurate statement of expenditures, the amount of goods sold and money collected, etc., and, at the end of each month, after deducting his compensation and the expenses of the office from the receipts, to remit the balance to the corporation. *Held*, that the contract created the relation of principal and agent, and not that of vendor and vendee.

2. CONTRACTS: Construction. A contract is to be construed as a whole, with regard to its general tenor and purpose, giving, however, rational effect, if possible, to all of its provisions.

3. ————: Evidence: Admissibility of Parol Evidence to Resolve Ambiguity. Where a contract is ambiguous, by reason of apparently contradictory provisions, rendering the parties' true intent and purpose obscure, the contemporaneous acts and declarations of the parties may be taken into consideration for the purpose of resolving such ambiguity; and this is true notwithstanding the contract recites that it embodies all prior negotiations.

4. CORPORATIONS: Failure to Become Licensed as Foreign Corporation: Breach of Contract. Where a corporation of this State entered into a contract with a resident of another State appointing him its sales agent therein, the failure of the corporation to take out a license to do business as a foreign corporation in such State, as required by its laws, did not render the contract void *ab initio*, but such failure rendered the contract impossible of lawful performance, and the corporation became liable to the agent as for a breach thereof.

5. ————: ————: ————: Damages. In an action against a corporation by a sales agent for breach of the contract of agency in failing to take out a license to do business as a foreign corporation in the State in which the agent was to operate, as required by the laws of such State, *held* that plaintiff was entitled to recover, as damages for the breach, the amount he deposited with defendant to cover the price of goods delivered to him for sale (the goods having been tendered back), the amount of salary he had earned, covering a period of sixty days (beyond which time it would have been unlawful to conduct the business without a license), and his expenses.

6. RECEIVERS: Form and Sufficiency of Claims. The sales agent of a corporation sued it for breach of his contract of

192 App. 41

employment. Pending suit, a receiver for defendant was appointed, and the agent filed with him a claim, verified by oath, to which was attached a copy of the petition filed in the original suit, averring that the contract, by defendant's acts, became "impossible to perform, inoperative, and void," while the claim itself stated that the demand was based on the contract filed with the original petition. The alleged impossibility of performance consisted in the fact that defendant, a Missouri corporation, appointed the agent to conduct a sales agency in South Carolina, and thereafter failed to comply with the laws of such State relative to the doing of business by foreign corporations. *Held*, that whether the contract, strictly speaking, became void or not, the claim against the receiver, averring that it was void, was sufficient, since the ordinary rules of pleading do not apply with strictness to claims against receivers.

Appeal from St. Louis City Circuit Court.—*Hon. Leo S. Rassieur,* Judge.

REVERSED AND REMANDED (*with directions*).

*T. M. Pierce* and *S. P. McChesney* for appellant.

(1)   The contract between the appellant and the Donnell Company created an agency for the doing of business for the Donnell Company in South Carolina. Willcox & Gibbs Sewing Machine Co. v. Ewing, 141 U. S. 627, 35 Law. Ed. 882. (2)   The contract between the appellant and the Donnell Company was void because the Donnell Company had not complied with the laws of South Carolina regulating the licensing of foreign corporations. 1 Laws of South Carolina, 1902, ch. XLIV, p. 680; British American Mortgage Co. v. Jones, 77 S. C. 443, 58 S. E. 417; Chattanooga National Building & Loan Ass'n. v. Denson, 189 U. S. 408, 47 Law. Ed. 870; Stegall v. Pigment & Chemical Co., 150 Mo. App. 287; Ehrhardt v. Robertson Bros., 78 Mo. App. 404; American Steel & Wire Co. v. Speed, 192 U. S. 500, 48 Law. Ed. 538. (3)   The contract between the appellant and the Donnell Company being void, as violative of the laws of South Carolina, the appellant

was entitled to receive back from the Donnell Company all the money paid by him under said contract and the value of his time, so that the appellant might be restored to his original financial condition at the time said contract was executed. Roeder v. Robertson, 202 Mo. 522.

*Fred Armstrong, Jr.,* for receiver.

(1) When a contract or agreement of parties is committed to writing and is complete on its face, it is conclusively presumed that all prior negotiations were merged in the writing and parol evidence is inadmissible to contradict or vary the terms of the contract or agreement as shown by the writing. Griffin v. Miller, 188 Mo. 327; New York Life v. Wolfson, 124 Mo. App. 286; Laclede Const. Co. v. Moss Tie Co., 185 Mo. 25. (2) Where the various provisions of a contract are not ambiguous in themselves, but are contradictory of each other, the meaning of the contract is a matter of law to be determined by the court from the face of the contract itself, and extrinsic evidence, whether of preliminary negotiations or of other matters, is inadmissible. Such a contradictory contract, if at all properly called "ambiguous," is such because of "patent ambiguity" and such ambiguity cannot be explained by parol. Bent v. Alexander, 15 Mo. App. 181, 9 Cyc. Contracts, 583. (3) The contract in suit, on its face, is a sales contract to be performed in St. Louis. Henry Bill Pub. Co. v. Durgin, 101 Mich. 458; Willcox & Gibbs Co. v. Ewing, 141 U. S. 627; Arbuckle Bros. v. Kirkpatrick, 98 Tenn. 221, 36 L. R. A. 285; Conn v. Chambers, 123 N. Y. App. Div'n 298, 107 N. Y. Supp. 976; in Vereinigte Pinsel-Fabriken v. Rogers, 52 N. Y. App. Div. 529, 65 N. Y. Supp. 478; Snelling v. Arbuckle Bros., 104 Ga. 362; Arbuckle Bros. v. Gates, 95 Va. 802; 31 Cyc. 1198. (4) Where a contract is fairly and reasonably open to two constructions, one making it legal and the other illegal,

the former must be adopted. Wiggins Ferry Co. v. C. A., 128 Mo. 224; Glover v. Insurance & Security Co., 130 Mo. 173; State ex rel. v. City of Neosho, 203 Mo. 40; Rogers v. Foundry Co., 167 Mo. App. 228. (5) Granted that the contract did contemplate doing business in South Carolina so as to necessitate the Donnell Company securing a license to do business in that State, the contract was not void because at the time of execution the Donnell Company did not have such license; nor did the contract become void because the Donnell Company did not subsequently take out such license. It was not void for illegality, nor was it void because impossible of performance, for the Donnell Company might at any time have taken out such license. At most the Donnell Company is liable only for a breach of contract. Hogan v. City of St. Louis, 176 Mo. 149; Wulfing v. Cork Co., 250 Mo. 723; 19 Cyc. 1270, 1275; Galletley v. Strickland, 74 S. C. 394.

ALLEN, J.—In 1907 the appellant, R. L. Zeigler, instituted in the circuit court of the city of St. Louis an action against the Donnell Manufacturing Company, a corporation. During the pendency of this suit a receiver was appointed for said corporation, and on April 9, 1910, appellant filed with the receiver a claim based upon his said alleged cause of action. The matter was referred to a referee who in due course made report of his findings, recommending that the claim be disallowed. The claimant's exceptions to the referee's report were overruled by the circuit court, and the cause is here on his appeal.

In February, 1907, appellant, a resident of South Carolina, having seen an advertisement of the Donnell Manufacturing Company, of St. Louis, whereby the latter advertised for a man to manage a branch wholesale business, at a salary of $1800 per year, wrote said company making application for the position. The company promptly replied, and further correspondence

was had between the parties. Appellant furnished "references," to whom the company wrote receiving satisfactory replies. On or about March 21, appellant, at the company's suggestion, and it paying one-half of his expenses, came to the city of St. Louis, for a "personal interview," and on the following day a written contract was entered into between him and said company in terms as follows:

"This Agreement, made and entered into this twenty-second day of March, 1907, by and between the Donnell Manufacturing Company of the city of St. Louis, and State of Missouri, party of the first part, and R. L. Zeigler, party of the second part, of the city of Allendale, State of South Carolina, WITNESSETH:

"That the parties hereto, after a personal interview and examination by said second party of the goods manufactured and sold by said first party, have embodied the result of all previous and present negotiations, representations and understandings into this writing, said agreement being as follows, to-wit:

"1. That said first party engages the said second party in the capacity of sales agent, to conduct a sales agency for the sale of its goods and specialities in the city of Columbia, State of South Carolina, for a period of two years, that is to say twenty-four months from the date that the sales office is opened for the second party, as hereinafter provided for, and for and in consideration of the faithful performance and fulfillment by said second party of each and all of the several agreements hereinafter contained and agreed to between the parties, said first party agrees to pay to the party of the second part one hundred fifty dollars per month, payable as hereinafter provided, and five per cent. additional commission on all sales of said office during the continuance of this contract.

"2. The party of the first part further agrees at its own expense, to open and fit up an office or sales

room for the use of the second party at said city, in which the party of the second part shall carry on said business, as herein provided for, and the party of the first part further agrees to sell and deliver to said second party, such stock of goods as it manufactures and sells, as the trade of the said office may require from time to time at forty per cent. discount from retail prices, and to supply merchandise at the same rate to the party of the second part for all moneys received from said second party, and to instruct said second party in the details of handling the business so far as is necessary in the estimation of the said first party. At the expiration of the term as above and fulfillment of this agreement by said second party, the party of the first part further agrees to repurchase from said second party all stock that he may have on hand and which was purchased from said first party, paying therefor in cash the same prices as originally charged him, said stock to be in fairly good condition.

"In consideration of the foregoing and subsequent agreements herein, the said second party agrees to the following:

"1. The said party of the second part will and does hereby engage and agree to become sales agent for the goods manufactured and sold by the party of the first part, as heretofore stipulated, for a term of two years, and that he will devote his whole time and best efforts to advancing the success of the business and to satisfactorily perform the duties herein required of him, dealing honorably with the party of the first part, the public and all persons with whom he may have business relations.

"2. That the second party will supply no stock purchased or furnished him by the first party to agents, dealers or other purchasers from him at other than the prices and on the terms, from time to time, agreed upon between the parties hereto, and only for cash with orders or on thirty days' time, if secured by the

endorsement of some financially responsible party or on satisfactory letters of credit. All sales to be made by the second party to agents at a discount of thirty-three and one-third per cent. and to dealers at twenty-five per cent. from retail prices. The said party of the second part is to use his due care and diligence in looking up the standing of people to whom goods are sold on credit and then if any losses arise, these losses are to be charged as an item of expense to the business.

"3. Said second party further agrees to carry at the agency aforesaid a stock of merchandise manufactured or sold by the party of the first part, amounting to one thousand six hundred and sixty-six and two-thirds dollars at retail prices, which shall be an assortment to be selected by the party of the first part or jointly selected by the parties hereto, and to be billed to said second party at forty per cent. discount from retail prices, amounting to one thousand dollars net. The said party of the first part is to carry all additional stock necessary for the proper handling of the business, based upon sales and reports of demonstrators and sales people.

"4. The party of the second part further agrees to furnish the said party of the first part with daily and weekly reports and at the end of each month to forward to the party of the first part a report of all business done during said month, giving the names and address of any and all agents appointed, a full and accurate statement of expenditures, amount of goods sold, of money collected, and any other information regarding the business that may be requested by the party of the first part.

"5. As the permanent success of this business will depend upon a reasonable amount of merchandise being sold, it is understood and agreed that the sales of each month shall amount to six hundred dollars, which shall be considered the minimum amount of business necessary to constitute the fulfillment of this con-

tract, and when the term minimum amount is herein used, it will be held to mean six hundred dollars. If the sales of any month shall not amount to this minimum amount and during the succeeding month sales are in excess of the minimum amount required to make up an average of six hundred dollars, a month, this contract will hereby be fiulfilled in this respect by the party of the second part. If the sales at the end of the first year shall not have averaged six hundred dollars per month, the party of the first part reserves the right to cancel this contract if it so desires, and upon such cancellation shall repurchase from said second party all stock that he may have on hand, purchased from said first party, paying therefor in cash the same prices as originally charged him, said stock to be in fairly good condition.

"6. It is mutually understood and agreed between the parties hereto that the said second party shall have the right and authority to collect all money for business done through said office, and that at the end of each month, after deducting from the receipts of said office the amount of his own remuneration, to-wit, one hundred and fifty dollars and necessary expenses such as rent, office help, postage, advertising matter, office sundries and commissions, etc., all other expenses and those herein mentioned being subject to the approval in writing by the party of the first part, he shall remit with his monthly account the balance to said party of the first part, at its office in the city of St. Louis. When such remittance is received, the party of the first part will then replace, as herein provided for, the stock sold during the previous month by the party of the second part; and in case the minimum amount of business required has been transacted and shall not be sufficient to pay the expenses of the office, as herein provided for, cost of replacing stock sold, etc., such deficiency shall be made good by the party of the first part at the end of each month.

"7.  It is further mutually agreed by both parties hereto that the said party of the second part shall have the right to renew this contract at its expiration for such further term as may be then mutually agreed upon, it being understood by both parties that the expenses incident to the opening of said office constitute the necessity of a permanent arrangement.

"In further consideration of the foregoing covenants and agreements to be kept and performed by the party of the first part, the party of the second part has this day paid to the party of the first part one thousand dollars, receipt whereof is hereby acknowledged in payment of stock of goods to be furnished as herein provided.

"In Witness Whereof, etc."

Upon the execution of this contract appellant paid the Donnell Company $500, and shortly thereafter paid it a like sum, making a total of $1000 provided by the contract to be paid by appellant.  Appellant thereupon went to Columbia, South Carolina, where he met a representative of the company who there rented and furnished an office for the carrying on of said business. The company furnished appellant with goods in accordance with the contract, and appellant conducted the said business for a period of about two months. The Donnell Company, however, did not comply with the laws of South Carolina relating to foreign corporations, and appellant, upon advice of counsel, refused to further continue carrying on the business, and demanded of the company the return of the $1000 deposited with it together with the sum of $300 as compensation for his services and $26 for expenses alleged to have been incurred by him, offering to return the stock of goods on hand.  The company refused appellant's demands, and declined to receive back the goods; whereupon appellant instituted his suit.

The learned referee found that the foregoing contract was not one of agency, but that by its terms ap-

pellant had agreed to purchase certain goods from the Donnell Manufacturing Company; that under the contract the title thereto vested in appellant as purchaser upon his receipt of the goods, and that in selling the same he was selling his own property and not that of the Donnell Company.; that the Donnell Manufacturing Company was therefore not doing business in the State of South Carolina, but doing an interstate commerce business, and was not required to comply with the laws of said State as a foreign corporation; and that the company's failure in this respect did not prevent appellant from carrying out the terms and provisions of the contract on his part, or render it void or impossible of performance.

But we find ourselves unable to sanction the view taken by the referee respecting the construction of the contract. In our judgment it is one of agency, creating the relation of principal and agent between the parties. This is the crucial question involved, upon the determination of which the case before us turns. The laws of South Carolina regarding the doing of business within that State by foreign corporations were put in evidence and are before us. It is unnecessary to here set out these statutory provisions. It is sufficient to say that if appellant was acting as an agent of the Donnell Company in conducting the aforesaid business, the business being that company's business, and not appellant's, it was unlawful for appellant, as such agent, to continue the conduct thereof in the State of South Carolina without compliance by the corporation with the laws aforesaid. On the other hand, if the contract was one of sale, whereby the title to the goods shipped vested in appellant as purchaser, the business conducted by him being his own business and not that of the corporation, as the referee found, then the corporation's part of the transaction as a whole was an interstate commerce business, and it could not be required to comply with the laws of South Carolina as a foreign corporation.

The contract begins by providing that the company "engages" appellant "in the capacity of sales agent" to conduct "a sales agency" in Columbia, South Carolina, agreeing to pay appellant $150 per month and in addition thereto five per cent. commission on all sales. The company agrees to open and fit up an office at its own expense for the carrying on of such business. The contract requires appellant to devote his entire time to the business and to deal honorably not only with the company but with "the public and all persons with whom he may have business relations." Appellant is required to sell for cash, or "on thirty days' time, if secured by the endorsement of some financially responsible party, or on satisfactory letters of credit," to sell goods at certain designated prices and to use care and diligence in ascertaining the standing of people to whom goods are sold on credit. He is required to furnish the company with daily, weekly and monthly reports, to give a full and accurate statement of expenditures, the amount of goods sold, money collected, etc., and at the end of each month, after deducting from the receipts his compensation and the expenses of the office, to remit the balance to the company.

On the other hand the contract provides that the company shall sell and deliver to appellant goods at forty per cent. discount from retail prices, and, upon the expiration of the term of the contract, "repurchase" from appellant stock remaining on hand; and there is a recital that appellant has paid to the company $1000, "in payment of stock of goods to be furnished him as herein provided."

It is true that the mere use of the terms "sales agent" and "sales agency" does not necessarily render the contract one of agency. But neither does the presence of the words "sell and deliver" or the recital that appellant's $1000 is received "in payment of stock of goods," necessarily make it a contract of sale. The contract is to be construed as a whole, with regard to

its general tenor and purpose, giving, however, rational effect, if possible, to all of its provisions. It is quite evident that it contemplates the transaction of business at Columbia, South Carolina, as to the company's business, and not as the business of appellant. This appears from the fact that appellant is engaged as a sales agent to conduct a sales agency, at an agreed compensation, the company to fit up the offices therefor at its own expense; that appellant is not permitted to conduct the business as he chooses, but is instructed in regard to the prices at which he is to sell goods, is required to take certain precautions in the matter of extending credit; and that he must make daily reports to the company, and certain weekly and monthly reports as well, and remit monthly all receipts remaining after deducting expenses including his own compensation. Aside from the use of the terms "sales agent" and "sales agency" these important provisions, indicating the relation sought to be established between the parties, are utterly incompatible with any theory other than that appellant became the company's agent to conduct a branch of its business in South Carolina.

That the contract provided that the goods supplied appellant were sold to him, the company agreeing to "repurchase," at the same price, whatever might remain on hand at the expiration of the term of the contract, if in fairly good condition, ought not to be regarded as controlling on the question in hand, in view of the provision discussed above. When we come to consider the agreement to repurchase, at the same price at which the goods were billed to appellant, it makes the so called sale of these goods appear to be merely an arrangement whereby the company was to supply appellant with a stock of goods and replenish the same from time to time, retaining in the meantime appellant's $1000 and making him responsible for the return of goods unsold, the value of such goods being placed

Watkins et al. v. Donnell.

at forty per cent. of the retail price thereof. That not only the original stock representing appellant's $1000, but future shipments were to be billed to appellant at forty per cent. reduction from retail price, is not inconsistent with this view, for the company was to get all of the net receipts arising from the sale of goods from which to replenish the stock as needed.

The contract provides that in addition to the stock represented by appellant's $1000 the company will "carry all additional stock necessary for the proper handling of the business;" and the company agrees, upon receiving remittance of the net receipts each month to replace the stock sold during the previous month. Had the contract been fully performed, and the stock kept replenished, the company would have been obligated in the end to take back the stock remaining on hand, if in fairly good condition, crediting appellant with all thereof at the prices mentioned. While an ulterior motive and purpose may have lurked behind the entering into of this contract by the Donnell Company—a matter not here in question—if carried out in good faith according to what—in spite of its apparent contradictions—must be regarded as the true intent and spirit thereof, appellant, as we view the matter, would have been conducting all the while defendant's business as its agent, for a stated remuneration, having $1000 invested therein; defendant receiving the net profits, if any, and being liable for appellant's salary and commissions as well as other expenses. It is certain that appellant could make no profit out of the business beyond his salary and commission. But as the company received all moneys arising from the sale of goods, after deducting expenses, it presumably would be enabled to make a profit upon its goods, if the volume of business was sufficiently great. This, of course, must have been the company's object, if there was any good faith on its part in the transaction.

In this view of the contract, there can be no doubt that in operating thereunder the corporation was doing business in the State of South Carolina; and that the conducting of such business, without a license so to do was illegal, subjecting the offender to the penalties prescribed by the laws of that State for such offense.

It is useless to discuss the cases cited and relied upon in the briefs, since the contracts involved differ materially from that before us. But see what is said by Mr. Justice HARLAN, in holding a contract under consideration to be one of agency, in Wilcox & Gibbs Co. v. Ewing, 141 U. S. 636, from which we quoted in Handlan-Buck Mfg. Co. v. Stave Electrical Co., 184 Mo. App. 247, 168 S. W. 785. Learned counsel for the receiver, in support of his contention that the contract is one for the sale of goods, contemplating an interstate commerce business, and that consequently the company could not be required to comply with the laws of South Carolina as a foreign corporation, cites: Henry Bill Pub. Co. v. Durgin, 101 Mich. 458; Arbuckle Bros. v. Kirkpatrick, 98 Tenn. 221, 36 L. R. A. 285; Conn v. Chambers, 123 N. Y. App. Div'n, 298, 107 N. Y. Supp. 976; Snelling v. Arbuckle Bros., 104 Ga. 362; Arbuckle Bros. v. Gates, 95 Va. 802; Standard Fashion Co. v. Cummings, 153 N. W. 814.

But upon the facts involved in each of those cases the conclusions reached therein afford no persuasive authority for the said contention of counsel.

We have reached the conclusion above expressed from a consideration of the provisions of the contract alone. But if the contract can be said to be ambiguous, by reason of its apparently contradictory provisions, rendering obscure the true intent and purpose thereof, then the contemporaneous acts and declarations of the parties—defendant's advertisement and the correspondence leading up to the contract—may be looked to to resolve such ambiguity. [Laclede Construction Co. v. Moss Tie Co., 185 Mo. 25, 84 S. W. 76.] And if nec-

essary to resort to evidence *aliunde* to explain the contract, this rule is in no wise affected by the declaration in the contract itself that it embodies all prior negotiations, etc. This is nothing more than that which the law presumes as to all written contracts that are definite and clear; but it does not prevent resort to extrinsic evidence, of the proper sort, where by such means alone doubt may be removed as to the meaning of terms employed in the writing.

The company advertised for a man to manage a "branch wholesale business," and wrote appellant that it was its intention to open a branch business from which to distribute its goods, using the office in South Carolina as a "distributing depot" for that territory. It further wrote appellant that the latter's $1000 would be "perfectly secure," "being always represented either by merchandise on hand or cash for the same," and would be returned to appellant upon his return of goods on hand.

We think the writing, considered alone, is susceptible of but one rational interpretation. However, any doubt that may come from the use of certain terms employed therein, is readily dispelled when the contract is read in the light of the acts and declarations of the company leading up to its execution.

It is true that the company's subsequent failure to comply with the laws of South Carolina did not render the contract void *ab initio*. It was competent for the company to contract in this State with an agent looking to the transaction of business in the State of South Carolina. [Hogan v. City of St. Louis, 176 Mo. 149, 75 S. W. 604.]. But the company, by its own act in failing to seasonably comply with the laws of the foreign State, rendered the contract impossible of lawful performance. Appellant conducted the business for a period of about two months. This perhaps could be lawfully done (see South Carolina Code 1902, Vol. I., chapter XLIV, p. 680, et seq.), but we need not so decide.

In any event it was unlawful for appellant to continue to conduct the business beyond a period of sixty days; and the corporation having thus rendered the contract impossible of performance became liable as for a breach thereof. And we think that appellant was thereupon entitled to tender back the goods and recover, as damages for the breach, his $1000, salary earned, and expenses.

But it is argued that appellant is not proceeding on the contract and is not entitled to recover on the theory that the corporation was guilty of a breach thereof in the manner mentioned. The appellant filed with the referee a "claim," verified by oath, to which was attached a copy of the second count of the petition filed in the original suit. The latter, *inter alia,* avers that the contract, by defendant's alleged acts, became "impossible to perform, inoperative and void." The claim itself states that the demand is based on the contract filed with the original petition as an exhibit. The ordinary rules of pleading do not apply with strictness to such proceedings as these. And we see no objection to granting appellant the relief to which he appears to be entitled. The contract, strictly speaking, was not void. It could have been performed had the company taken the requisite steps in the premises; but by its own act it rendered it impossible for appellant to lawfully perform his part thereof, whereby it became liable as upon a breach of its undertaking.

There is no evidence in the record in proof of the amount, if any, of the expenses claimed to have been incurred by appellant in undertaking to perform the contract. The judgment will accordingly be reversed and the cause remanded with directions to the circuit court to order the allowance of appellant's claim for $1300. It is so ordered. *Nortoni, J.,* concurs; *Reynolds, P. J.,* not sitting.